# BRIGGS v. WALKER.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 260. Submitted April 25, 1898. — Decided October 17, 1898.

Under an act of Congress, entitled "an act for the relief of the estate" of a certain person deceased, and conferring upon the Court of Claims jurisdiction to hear and determine "the claim of the legal representatives" of that person for the proceeds in the treasury of his property taken by the United States, the executor is the legal representative, and any sum recovered by him by suit in that court is assets of the estate and subject

to the debts of the testator; and a decision of the highest court of a State in favor of creditors against the executor presents a Federal question, as to which it may be reviewed by this court upon a writ of error sued out by the executor.

THE controversy in this case was between the executor and two creditors of Charles M. Briggs, and arose as follows:

On April 18, 1862, during the war of the rebellion, Charles S. Morehead, of Kentucky, executed and delivered to his nephew, Charles M. Briggs, a bill of sale of cotton in Mississippi, in these terms:

"For and in consideration of money loaned and advanced heretofore by C. M. Briggs, and further valuable consideration by way of suretyship for me by said Briggs, I hereby sell and transfer to said C. M. Briggs all the cotton on my two plantations in Mississippi near Eggspoint and Greenville. Said cotton so sold embraces all I have, baled and unbaled, gathered and ungathered. This is intended to cover all cotton that I have now or may have this year on said two plantations, supposed to be about 2000 bales."

At the same time, Briggs executed and delivered to Samuel J. Walker, Morehead's son in law, a writing in these terms:

"In consideration of the sale and transfer this day made to me by C. S. Morehead of all the cotton on his two plantations near Eggspoint in the State of Mississippi, as specified in said sale and transfer in writing, I hereby assume and agree to pay to Samuel J. Walker the sum of forty thousand dollars due and owing to said Walker by said C. S. Morehead, upon condition, however, that I realize sufficient amount from any cotton on or from said plantations or proceeds of same, together with about twenty-five thousand dollars due me from said C. S. Morehead for moneys advanced and liability for him as surety; also about ten thousand dollars, more or less, being a claim of A. S. Shotwell as he may hereafter establish against said C. S. Morehead; but in case I should not realize sufficient to pay all of said claims or amounts above named in full, then I am to pay or divide the amount that may be realized from said cotton, proportionately or *pro rata* according to the respective amounts named, to the parties above named, first,

however, paying and refunding any moneys paid by the respective parties for or on account of expenses pertaining to same; and in case more should be realized than sufficient to pay said amounts, with interest thereon to the time of realization and payment, then any surplus to be divided, one half to said Shotwell and C. M. Briggs jointly for any services, and the remaining one half to said Samuel J. Walker, but no other consideration to be paid to said Shotwell and Briggs for their service."

Briggs at once took steps to get possession of the cotton, but was prevented by the Federal forces and the Confederate forces in the vicinity. This cotton, amounting to four hundred and fifty bales, was finally seized, together with other cotton, by Captain G. L. Fort, assistant quartermaster general in the United States Army, in behalf of the United States, and was by him sold and the proceeds paid into the Treasury of the United States.

Briggs died in 1875, after repeated and unsuccessful efforts, through his attorneys, to obtain the proceeds of the cotton in question; and his executor continued the efforts, and, through the same attorneys, procured the passage of the act of Congress of June 4, 1888, c. 348, copied in the margin.[1]

---

[1] An act for the relief of the estate of C. M. Briggs, deceased.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Court of Claims is hereby given, subject to the proviso hereinafter mentioned, like jurisdiction to hear and determine the claim of the legal representatives of C. M. Briggs, deceased, for the proceeds of four hundred and fifty-five bales of cotton, now in the Treasury of the United States, alleged to have been owned, in whole or in part, by said Briggs, as is given to said court by the acts of March twelfth, eighteen hundred and sixty-three, and July second, eighteen hundred and sixty-four, upon petition to be filed in said court at any time within two years from the passage of this act, any statute of limitations to the contrary notwithstanding: Provided, however, that unless the said court shall, on a preliminary inquiry, find that said Briggs was in fact loyal to the United States Government, and that the assignment to him hereinafter mentioned was *bona fide*, the court shall not have jurisdiction of the case, and the same shall, without further proceedings, be dismissed: And provided further, that if the court shall find that the alleged assignment from one Morehead to said Briggs, of date April eighteenth, eighteen

Under the provisions of that act, Briggs's executor brought suit in the Court of Claims and therein recovered the sum of $88,000. See *Briggs* v. *United States,* 25 C. Cl. 126; 143 U. S. 346; 27 C. Cl. 564. Half of that sum was paid to the attorneys, pursuant to a contract between them and Briggs; and the rest, being the sum of $44,000, came to the hands of the executor.

Thereupon the executor, in a suit previously brought against him for the settlement of Briggs's estate, in the chancery division of the circuit court for the county of Jefferson and State of Kentucky, set up, by amended answer, that he had collected this sum of $44,000; and prayed that Walker's widow (to whom Walker had assigned his claim) and Shotwell's administrator might be made parties to the suit, and be required to set up their claims to this sum. And Mrs. Walker and Shotwell's administrator filed petitions in the cause, claiming the sums mentioned as due to Walker and to Shotwell, respectively, in the writing signed by Briggs, April 18, 1862, and above set forth.

To these petitions the executor of Briggs filed supplemental answers, in which, among other things, he set up the act of Congress of June 4, 1888, and the proceedings in the Court of Claims; and alleged that " in pursuance to the said act this defendant, through his said counsel, instituted an action against the United States in the Court of Claims to recover the proceeds of sale of the cotton aforesaid, and in and by said action it was finally determined and adjudged that the said

---

hundred and sixty-two, under which said Briggs claimed said cotton, was intended only as security to said Briggs for indebtedness, and against contingent liabilities assumed by him for said Morehead, judgment shall be rendered for such portion of the proceeds of said cotton as will satisfy the debts and claims of said Briggs to secure which said assignment was given : Provided, said judgment shall not be paid out of the general fund in the Treasury arising from the sale of captured and abandoned property, but shall be paid out of the special fund charged to and accounted for by Captain G. L. Fort, assistant quartermaster at Memphis, arising from the sale of the two thousand two hundred and nine bales of cotton, received by him, with which claimant's cotton was intermingled, said claimant to receive only the proportion which his cotton bears to the net proceeds accounted for by said Fort. 25 Stat. 1075.

testator was loyal to the United States, and that the assignment made by said Morehead to defendant's testator was *bona fide* and founded on a valuable consideration ; but this defendant was, by the act aforesaid, as well as the final judgment of the Court of Claims, limited in his recovery to such sum as would satisfy the debts and claims of his testator, to secure which the said assignment was given ; and this defendant says that by the final judgment of said Court of Claims he only received and recovered from the United States such sum as was owing directly to his testator by said Morehead, and did not recover anything whatsoever for or on account of anything that may have been owing by said Morehead to A. L. Shotwell or Samuel J. Walker ; " and further alleged that " the passage of the act aforesaid was an act of grace on the part of the United States for the sole benefit of this defendant, and to permit this defendant to assert a claim against the proceeds of said cotton to the extent that said Morehead was indebted to his testator ; that long prior thereto all claim that had existed in favor of said testator as against the United States for any part of the proceeds of said cotton had been barred by limitation, and said claim was outlawed and worthless ; " and that " it was not intended by said act that this defendant should recover anything for the benefit, directly or indirectly, of any other person."

The circuit court of Jefferson County sustained demurrers of the petitioners to the supplemental answers of the executor ; and, upon a hearing, found that there was due to Walker the sum of $40,000 and to Shotwell the sum of $6681.21 ; and adjudged that the sum of $44,000, in the hands of the executor, after deducting his commissions, be applied *pro rata* to the payment of these two sums, and of the further sum of $25,000 due from Morehead to Briggs. The executor appealed to the Court of Appeals of Kentucky, which affirmed the judgment. 43 Southwestern Reporter, 479. Thereupon he sued out this writ of error.

The case was submitted to this court upon a motion by the defendants in error to dismiss the writ of error for want of jurisdiction, or to affirm the judgment.

*Mr. James P. Helm, Mr. Helm Bruce* and *Mr. Samuel B. Vance* for the motion.

*Mr. William Stone Abert, Mr. Charles H. Gibson, Mr. John Marshall* and *Mr. D. W. Sanders* opposing.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The motion to dismiss must be overruled. An executor represents the person of the testator, and is charged with the duty of resisting unfounded claims against the fund in his hands. Co. Lit. 209*a; McArthur* v. *Scott,* 113 U. S. 340, 396. The record, therefore, does present the Federal question whether the right given by the act of Congress to the "legal representatives" of Charles M. Briggs was for the benefit of his next of kin to the exclusion of his creditors.

But we are of opinion that this question, which is the only Federal question in the case, must be answered in the negative, and consequently that the judgment of the Court of Appeals of Kentucky must be affirmed.

The primary and ordinary meaning of the words "representatives," or "legal representatives," or "personal representatives," when there is nothing in the context to control their meaning, is "executors or administrators," they being the representatives constituted by the proper court. *In re Crawford's Trust,* 2 Drewry, 230; *In re Wyndham's Trusts,* L. R. 1 Eq. 290; 2 Jarman on Wills, c. 29, § 5, (5th ed.) 957, 966; Williams on Executors, pt. 3, bk. 3, c. 2, § 2 (7), (9th ed.) 992; *Cox* v. *Curwen,* 118 Mass. 198; *Halsey* v. *Patterson,* 10 Stew (37 N. J. Eq.) 445.

In *Stevens* v. *Bagwell,* 15 Ves. 139, 152, a claim by the next of kin of a naval officer to the share awarded him in a prize condemned after his death, and ordered by treasury warrant to be paid to his "representatives," was rejected by Sir William Grant, who said that the intention of the Crown in all cases of this kind is to put what is in strictness matter of bounty upon the footing of matter of right, and not to exercise any kind of judgment or selection with regard to the persons

to be ultimately benefited by the gift; that the representatives to whom the Crown gives are those who legally sustain that character; but the gift is made in augmentation of the estate, and is to be considered as if it had been actually part of the officer's property at the time of his death.

In this court, it is well settled that moneys received by the United States from a foreign government by way of indemnity for the destruction of American vessels, and granted by act of Congress to the owners of those vessels, without directing to whom payment shall be made in case of death or insolvency, pass to the assignees in bankruptcy for the benefit of the creditors of such owners, although such assignees have been appointed before the act of Congress making the grant. *Comegys* v. *Vasse*, 1 Pet. 193; *Erwin* v. *United States*, 97 U. S. 392; *Williams* v. *Heard*, 140 U. S. 529.

In *Emerson* v. *Hall*, 13 Pet. 409, cited by the plaintiff in error, in which money paid by the United States to the heirs at law, as "the legal representatives of William Emerson," under the act of March 3, 1831, c. 102, 6 Stat. 464, was held not to be assets in their hands for the payment of his creditors, the act, in its title, was expressed to be "for the relief of the heirs of William Emerson, deceased;" and it granted the money as a reward for services, meritorious indeed, but voluntarily rendered by Emerson, not under any law or contract, and imposing no obligation, legal or equitable, upon the government to compensate him therefor; and the money was therefore held to have been received by his heirs as a gift or pure donation.

In the provision of the appropriation act of March 3, 1891, c. 540, concerning the French Spoliation Claims, the words "personal representative" and "legal representative" were used to designate the executor or administrator of the original sufferer; and money awarded by the Court of Claims to such a representative was held by this court to belong to the next of kin, to the exclusion of assignees in bankruptcy, upon the ground that the act expressly so provided. 26 Stat. 897, 908. *Blagge* v. *Balch*, 162 U. S. 439.

The words "legal representatives" or "personal representa-

tives" have also been used as designating executors or admin-
istrators, and not next of kin, in acts of Congress giving
actions for wrongs or injuries causing death. Act of April 20,
1871, c. 22, § 6, 17 Stat. 15 ; Rev. Stat. § 1981; act of Feb-
ruary 17, 1885, c. 126; 23 Stat. 307 ; *Stewart* v. *Baltimore & 
Ohio Railroad*, 168 U. S. 445, 449.

The act of June 4, 1888, c. 348, now before the court, is en-
titled "An act for the relief of the estate of C. M. Briggs,
deceased," and confers upon the Court of Claims "jurisdiction
to hear and determine the claim of the legal representatives of .
C. M. Briggs, deceased," for the proceeds, in the Treasury of
the United States, of cotton owned by him. The only condi-
tions which the act imposes upon the right of recovery are
that the petition shall be filed in the Court of Claims within
two years; that that court shall find that Briggs was in fact
loyal to the United States, and that Morehead's assignment
of the cotton to Briggs was made in good faith; and that if
it shall find that the assignment "was intended only as secu-
rity to said Briggs for indebtedness, and against contingent
liabilities assumed by him for said Morehead, judgment shall
be rendered for such portion of the proceeds of said cotton
as will satisfy the debts and claims of said Briggs to secure
which said assignment was given." The "debts and claims,"
in this last clause, manifestly include both classes of debts
previously mentioned, namely, the direct "indebtedness" of
Morehead to Briggs, and the "contingent liabilities assumed
by him for said Morehead," including the claims of the de-
fendants in error, specified in the written agreement executed
by Briggs contemporaneously with the assignment, and the
amount of each of which has been ascertained by the court
below.

The act of Congress nowhere mentions heirs at law, or next
of kin. Its manifest purpose is not to confer a bounty or gra-
tuity upon any one; but to provide for the ascertainment and
payment of a debt due from the United States to a loyal citi-
zen for property of his, taken by the United States; and to ,
enable his executor to recover, as part of his estate, proceeds
received by the United States from the sale of that property.

The act is "for the relief of the estate" of Charles M. Briggs, and the only matter referred to the Court of Claims is the claim of his "legal representatives." The executor was the proper person to represent the estate of Briggs, and was his legal representative; and as such he brought suit in the Court of Claims, and recovered the fund now in question, and consequently held it as assets of the estate, and subject to the debts and liabilities of his testator to the defendants in error.

*Judgment affirmed.*