UNITED STATES of America, Plaintiff,

v.

MIRROR LAKE GOLF AND COUNTRY CLUB, INC., also known as Lakeside Country Club, Inc., a Missouri corporation, Edward P. Osadchey, also known as "Eddie Spitz", William R. Osadchey, also known as Billy Ray Zirkle and Billy Ray Isenhart, Roy Osadchey, Marco M. Filardo, and Victor J. Vogliardo, Defendants.

No. 21640–1.

United States District Court
W. D. Missouri, W. D.

July 29, 1964.

F. Russell Millin, U. S. Atty., Clifford
M. Spottsville, Asst. U. S. Atty., Kansas
City, Mo., Herbert W. Titus, Sp. Asst. U.

S. Atty., George E. Adams, Jr., Office of Chief Counsel, I. R. S., Washington, D. C., for plaintiff.

S. Preston Williams, Wm. Harrison Norton, North Kansas City, Mo., Henry Hudson Fox, Jr., Kansas City, Mo., for defendants.

JOHN W. OLIVER, District Judge.

### Introduction

This jury-waived case involves a sixteen count indictment against defendants Mirror Lake Golf and Country Club, Inc., Edward P. Osadchey, William R. Osadchey, Roy Osadchey, Marco M. Filardo and Victor J. Vogliardo.

Count I alleges a violation of Section 371 of Title 18 United States Code. All defendants are there charged with a conspiracy to commit the substantive offenses alleged in the other counts of the indictment.

Counts II through VII allege that the defendant Club and the three Osadcheys violated Section 5117(a) and 5687 of Title 26 United States Code.

Count XIV charges the defendant Club with a violation of Section 5124 and 5603(a) of Title 26 United States Code.

Count VIII charges defendants Filardo and Vogliardo with a violation of Section 203(c) (1) and 207 of Title 27 United States Code. Counts IX and X charge those two defendants with violations of Section 5691(a) of Title 26 United States Code.

Defendants Filardo and Vogliardo are also charged with violations of Section 5603(a) of Title 26 in Counts XII and XIII.

The Government has moved to dismiss Counts XI, XV and XVI. That motion will be sustained. A description of those counts is redundant.

The parties entered into four stipulations of fact that susbtantially shortened the length of trial. We have studied the stipulations and the exhibits attached thereto, we heard and have since studied the transcribed testimony of the fifteen witnesses called by the Government and that of the five individual defendants; we have considered the written suggested findings of fact and suggested conclusions of law submitted by the parties.

We shall first make general findings of fact in narrative form applicable to all counts of the indictment. Additional findings of fact and conclusions of law will then be made in connection with each of the separate counts. After discussing each of the separate counts and our indication of the verdict in connection with each, we will direct further proceedings in this case.

### Findings of Fact Applicable to All Counts

Defendant Mirror Lake Golf and Country Club, Inc., originally incorporated under pro forma decree in 1952 as Lakeside Country Club, Inc., was organized at the instance of defendant Edward P. Osadchey, his brother, defendant Roy Osadchey, and its then attorney, Louis Wagner. From its outset the defendant Club paid the special tax required of a Retail Liquor Dealer. The operation of the defendant Club throughout the period of the indictment was pursuant to an agreement under which defendant Edward P. Osadchey rented all of the physical facilities to the Club in consideration of receiving all moneys earned in its operation.

Defendant Edward P. Osadchey and a family partnership composed of him, his brother, defendant Roy Osadchey, and his wife Vearl Osadchey, faced difficulties in connection with liquor because of the location of the Club in the county and the consequent inability to obtain a liquor license from the State of Missouri. Sales to unlicensed liquor dealers are illegal.

It became therefore imperative some sort of an arrangment be established under which liquor could be obtained for sale to club members that would violate neither the Federal nor the State liquor laws.

In a rather transparent manner, the Board of Directors of the defendant Club on June 2, 1953, shortly after its organization, passed a resolution that went

through the motions of creating a "liquor club" to be composed of such members of the corporation who were desirous of joining. In substance, that resolution authorized the collection of a single $2 fee with which liquor supposedly was to be purchased for the use of members of the corporation. The resolution, however, made clear that each member was to "pay for each drink served upon the premises of this corporation" and that the "proceeds derived therefrom to be used to replenish stock, mixers, ice, fruit, broken glasses, and for service."

It is undisputed that during the indictment period the purchases of liquor were not from any separate "liquor pool" account but that they were made from a general account fund maintained by the Osadchey partnership and that the receipts from all sales of liquor were deposited in the general operating fund controlled by that partnership.

We note in passing that the evidence shows that new counsel were employed in August of 1961 and that since their employment, substantial changes were made in the manner in which liquor is purchased for the use of members of the defendant Club. We, of course, do not have before us the legality or illegality of the present arrangement, and therefore are not required and do not pass judgment on the present arrangement. The fact that new counsel recognized the necessity for a change, however, is not without significance in this case and tends to confirm our findings in regard to the arrangement in operation during the indictment period.

Prior to September 4, 1959, one Sam A. Morris, joined as a co-conspirator but not as a defendant in Count I of the indictment, was the source through whom the Osadchey partnership was able to obtain liquor for the defendant Club. The method by which Sam A. Morris, an employee of both Kennedy Stubbers Distributing Company of Kansas City, and of the defendant Club, was patently illegal. In an administrative action, Morris' car was seized in September, 1959, under a forfeiture proceeding maintained on the ground that his car was being used in violation of the Internal Revenue laws arising from unlawful sales of liquor to the defendant Club. Other civil penalties were imposed on Morris.

All defendants had knowledge of those facts shortly after their occurrence. The detailed circumstances of how defendant Club received its liquor prior to September 4, 1959, are unimportant except as background evidence in this case and except for the fact that it makes obvious the fact that the supply of liquor to the defendant Club was terminated so far as Morris was concerned and that a new source of supply had to be developed for the defendant Club.

The evidence is a bit vague and uncertain as to who said what to whom at what particular time in regard to how the new source of liquor supply was to be established for the defendant Club; but the evidence establishes beyond reasonable doubt that shortly after the Morris source of supply was terminated, a new source of supply was developed under which defendants Marco M. Filardo and Victor J. Vogliardo became the new source of liquor supply for defendant Club.

The actual sales made from that new source are stipulated. The methods of operation under which Maynard J. Mitchell and Elmer F. Hogan, named as co-conspirators but not as defendants in Count I, and defendant William R. Osadchey, served as errand boys for the purpose of physically transporting the liquor from Broadway Liquors, defendants Filardo's and Vogliardo's place of business, to the defendant Club is likewise uncontroverted.

The evidence again is vague and uncertain in regard to how much of the details defendants Filardo and Vogliardo actually knew about the operation of the defendant Club, but there can be no reasonable doubt but that credit for the stipulated sales that eventually reached the defendant Club was firmly established and that orders were accepted and filled as placed by telephone calls.

Additional findngs will be made in the course of our discussion of the various counts of the indictment.

### Count I — Conspiracy

Alleged violation of Section 371 of Title 18 United States Code by all named defendants.

A verdict of acquittal will be entered in connection with Count I, in which it was charged that all of the named defendants conspired and agreed with others named as co-conspirators but not as defendants to commit the substantive crimes charged in other counts of the indictment.

Generally speaking, most, but not all, of the findings of fact suggested by the Government in regard to Count I are supported by the stipulations of the parties or are established beyond reasonable doubt by the evidence. But those facts do not constitute proof of conspiracy.

United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940), determined that "the gist of the offense of conspiracy * * * is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy." (l. c. 210, 61 S.Ct. l. c. 207). That case further held that "[t]hose having no knowledge of the conspiracy are not conspirators" and that "one who without more furnishes supplies to an illicit distiller is not guilty of conspiracy even though his sale may have furthered the object of a conspiracy * * * of which the supplier had no knowledge." (l. c. 210–211, 61 S.Ct. l. c. 207). The defendants in Falcone were not charged with aiding and abetting the commission of the substantive offense; they were charged with conspiracy. That case holds that persons so charged "cannot be brought within the sweep of the Government's conspiracy dragnet if they had no knowledge that there was a conspiracy" (l. c. 210, 61 S.Ct. l. c. 206).

On the particular facts involved in Falcone, as explained in Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943), it was determined that the former case "comes down merely to this, that one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally" (l. c. 709, 63 S.Ct. l. c. 1268).

Falcone held, as we hold, that the evidence of conspiracy in that, as in this case, is too vague and uncertain to support a finding that either a conspiracy existed or that defendants Filardo and Vogliardo knew of any existing conspiracy.

█ So far as the other defendants are concerned, it is certain that defendant Edward Osadchey did not have to nor did he in fact enter into any agreement or conspiracy with any other member of the Osadchey family concerning how liquor was to be purchased for the defendant Club. All of the evidence makes clear that he told the other members of the family what was going to be done; he did not ask them.

█ Nor can it fairly be said that defendant Edward Osadchey's conversation with Sam A. Morris concerning a new source of liquor supply measured up to an agreement or to a conspiracy. We have no reason to reject Morris' testimony that he made no arrangement with Broadway Liquors to buy liquor for Mirror Lake or with Mirror Lake to buy liquor from Broadway Liquors. He, of course, discussed the possibility that those parties might get together on their own, but such evidence falls far short of establishing beyond reasonable doubt the charge made in Count I of the indictment.

The evidence did establish beyond reasonable doubt that Morris, shortly after he had been caught, did suggest defendants Filardo and Vogliardo as a new source of liquor; that the new source of liquor was acceptable to defendant Edward P. Osadchey; that defendants Filardo and Vogliardo knowingly commenced sales that ultimately reached the defendant Club in the manner stipulated;

and that Mitchell, Hogan, and defendant William B. Osadchey served as errand boys to transport the liquor purchased from Broadway Liquors to the premises of the defendant Club.

Certainly such evidence can be said to establish criminal liability for various substantive offenses and for aiding and abetting of particular substantive offenses, but we do not think it sufficient to sustain a finding of guilt when offered to prove a conspiracy. Indeed, it is difficult to understand why the conspiracy count was included in the present indictment. Mr. Justice Stone's admonition against the attempted use of a "dragnet" was even more forcibly stated by Mr. Justice Jackson in his concurring opinion in Krulewitch v. United States, 336 U.S. 440 at 445, 69 S.Ct. 716, 93 L.Ed. 790 (1948). He spoke out most strongly against "the growing habit to indict for conspiracy in lieu of prosecuting for the susbtantive offense itself, or in addition thereto," suggesting that loose practice in that regard "constitutes a serious threat to fairness in our administration of justice" (l. c. 445–446, 69 S.Ct. l. c. 719–720). The reason why there is a serious threat to the administration of justice arises from the fact that defendants so charged must suffer the backlash of the "historical undertones of treachery, secret plotting and violence on a scale that menaces social stability and the security of the state itself" that attend an accusation of conspiracy (l. c. 448, 69 S.Ct. l. c. 720).

Mr. Justice Jackson made clear that what he said was not intended "to question that the basic conspiracy principle has some place in modern criminal law" but he did want to make the point that conspiracy charges could be "trivialized".

He also added, as do we, that "[o]f course, it is for the prosecutors rather than courts to determine when to use a scatter-gun to bring down the defendant" (l. c. 452, 69 S.Ct. l. c. 722); but it remains for the courts to determine whether the load of the scatter-gun is more than black powder.

■ So far as the conspiracy charge alleged in Count I is concerned, we find and determine that the Government fired a blank. Accordingly, a verdict of acquittal will be entered as to all defendants in regard to Count I.

Counts II through VII —
Alleged Violations of Sections 5117(a) and 5687 of Title 26 United States Code, by Defendant Club and by the Three Osadchey Defendants

Except for different dates and different quantities of liquor, each of the Counts II through VII allege that the four defendants therein named knowingly purchased distilled spirits for resale in violation of Sections 5117(a) and 5687 of Title 26 United States Code. There is no real dispute about most of the facts concerning the sales involved.

The four defendants contend that the members of the "liquor pool" were the only persons who sold or offered for sale any liquor and that, in any event, all of ·the facts and circumstances in this case do not establish what defendants claim is a requisite specific intent to violate the law.

■■ Defendant Club also contends that it is not a legal entity under the rule of Rockhill Tennis Club of Kansas City v. Volker, 331 Mo. 947, 56 S.W.2d 9 (1932), and that it therefore cannot be held guilty of any crime. The Rockhill Tennis Club case does not go so far. It holds that even though a particular club is improperly organized under the old pro forma decree statute, a club so organized is nevertheless a de facto corporation. It is horn-book law that a corporation may be held to be criminally liable even though its acts are ultra vires. The same principle renders a de facto corporation criminally liable. See 13 Am.Jur. 1057, Section 1132. And see also State v. Missouri Athletic Club, 361 Mo. 576, 170 S.W. 907 (1914), in which a quo warranto ouster against a social club was sustained on the ground that it was violating the State liquor laws in a manner not dissimilar to the factual situation admittedly present in this case.

Defendants' "liquor pool" defense is not tenable on the facts. Since at least 1892, so far as this federal judicial district is concerned, schemes and devices similar to the liquor pool arrangement established by the defendants in 1953 have been viewed realistically. Judge Philips, in United States v. Giller, W.D. Mo.1892, 54 F. 656, 659, rejected arguments substantially similar to those presented by the defendants in this case, holding that "we cannot shut our eyes to obvious facts".

■ It is an obvious fact that so far as the purchase and the sales of liquor on the premises of the defendant Club were concerned, defendant Edward P. Osadchey and members of his family merely utilized the corporate form of the defendant Club and its resolution creating the alleged liquor pool as a device to purchase and sell liquor. Those purchases and sales were made independent of any control or interest of any other person who might have been entitled, for one reason or another, to enjoy the physical facilities owned and operated by the Osadchey defendants.

One 1941 Buick Sedan v. United States, 10th Cir. 1946, 158 F.2d 445, collects the cases that hold that schemes not dissimilar to that here involved are illegal. That case concerned a Non-Commissioned Officers Club operated under the auspices of the American Legion in Casper, Wyoming. See also United States v. Alexis Club, E.D.Pa.1899, 98 F. 725.

Defendants, however, argue that there is no evidence that they had any specific criminal intent to violate the statutes here involved and that therefore they must be acquitted.

It is quite doubtful that the statutes here involved require any finding of specific criminal intent to establish a violation of law. Such was the holding of Michaels Enterprises Inc. v. United States, 8th Cir. 1963, 321 F.2d 913 (remanded on another point 376 U.S. 356, 84 S.Ct. 783, 11 L.Ed.2d 755).

The facts of this case do not require that we definitively determine which side of the line drawn by Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the statutes here involved may fall. Under the facts as we find them, it may be assumed that a finding of willful specific intent is necessary as a matter of law. The facts and circumstances as we find them require a finding that such an intent was present so far as the defendant Club and the defendant Edward P. Osadchey was concerned. An application of Section 2 of Title 18 United States Code, requires the conviction of defendant Roy Osadchey and defendant William R. Osadchey.

■ We expressly find it established beyond reasonable doubt that defendant Club, acting by and through Edward P. Osadchey, knowingly, willfully and unlawfully intended to make the stipulated purchases for purposes of resale. We likewise expressly find that defendants Roy Osadchey and William R. Osadchey, knowingly, willfully and unlawfully intended to aid and abet defendant Club and defendant Edward P. Osadchey in the commission of the offenses charged in the counts of the indictment under discussion and are therefore punishable as principals.

We cannot believe that the defendants could have failed to have realized from the experience suffered by Sam A. Morris that they were doing anything except risking a violation of the criminal law.

For the reasons stated, verdicts of guilty will be entered in regard to Counts II through VII against all four defendants for the reasons stated.

### Count XIV —

Alleged Violation of Sections 5124 and 5603(a) of Title 26 United States Code, by Defendant Club

■ We find and determine that the evidence adduced by the Government in connection with this count is insufficient to sustain any finding other than that

of not guilty. A review of that evidence is obviously redundant.

A verdict of not guilty will accordingly be entered in connection with Count XIV.

## Count VIII —
Alleged Violation of Section 203(c) (1) and 207 of Title 27 United States Code, by Defendants Filardo and Vogliardo

Count VIII charges defendants Filardo and Vogliardo with a violation of Section 203(c) (1) and 207 of Title 27 United States Code. Defendants rely principally upon Supreme Malt Products Co. v. United States, 1st Cir. 1946, 153 F.2d 5. The Government argues that the principles announced and applied in Eastman v. United States, 8th Cir. 1946, 153 F.2d 80, are applicable to the factual situation here involved.

The facts involved in connection with this Count are not in substantial dispute. Defendants' defense is basically a legal one in that they contend that proof of a specific criminal intent is a necessary element of the offense. They, of course, argue that the facts do not support such a finding.

Eastman did not hold that a finding of specific criminal intent was not necessary; the trial court submitted the question of specific criminal intent to the jury. The review of the evidence by both the trial and appellate courts in Eastman determined that it was sufficient to support the jury's finding of guilty. Eastman should not therefore be extended beyond the scope of its precise ruling.

Under the facts as we find them, it will be unnecessary to determine whether the argument noted in Eastman to the effect that "proof of criminal intent is unnecessary or that, as it is sometimes expressed, the law imputes intent from the act denounced," is or is not tenable. Consistent with our determination of the counts relating to the other defendants where a similar question was noted, we assume for purposes of our determination of this count, that a specific criminal intent is required as a necessary element of the offense.

As the trier of the facts, we find that all of the facts and circumstances establish beyond reasonable doubt that the assumed necessary element of specific criminal intent was in fact present in this case. Our general finding is based on the reasons we now state.

It must be noted at the outset that our general finding of acquittal in connection with the conspiracy charge in Count I does not command an acquittal in connection with this or any of the other substantive counts of the indictment. So far as defendants Filardo and Vogliardo were concerned in regard to the conspiracy count, their acquittal was based upon the Government's failure to prove the existence of any conspiracy and its failure to prove that these two defendants had any knowledge of any alleged conspiracy.

Our consideration of Count I did not require us to make any factual determination in regard to the intention with which defendants Filardo and Vogliardo acted in connection with the sales of liquor stipulated of record. That factual question, which we did not reach in connection with Count I, must be decided in connection with this count. And that finding of fact must be made in the light, not only of all the other facts and circumstances established beyond reasonable doubt, but also in the light of the rules of decision announced by our controlling courts.

Direct Sales Co., supra, held that "evidence too vague and uncertain to support a finding [of] conspiracy, [is] not inadequate in some instances to sustain [a finding] that the seller knew the buyer would use the goods for illegal distilling" (l. c. 709–710 of 319 U.S., 63 S.Ct. l. c. 1268). In other words, a failure of proof in regard to knowledge of a conspiracy does not necessarily mean that proof of knowledge of illegal sales must also fail.

That case also teaches that the factual basis upon which findings of knowledge and of intent to commit particular crimes must rest is not unrelated

to the type of goods sold; that the sales of articles of free commerce present a different factual situation from sales of restricted commodities which are subject to various requirements of the law; that "the very fact [particular goods] are restricted, makes a difference in the quantity of proof required to show knowledge that the buyer will utilize the article unlawfully" (l. c. 711, 63 S.Ct. l. c. 1269); and that proof of particular sales and purchases that might be "wholly innocuous or not more than grounds for suspicion in relation to unrestricted goods, may furnish conclusive evidence, in respect to restricted articles" (l. c. 711, 63 S.Ct. l. c. 1269).

That case added that "[k]nowledge, equivocal and uncertain as to one, becomes sure as to the other"; and that particular circumstantial evidence concerning sales of restricted commodities could well furnish conclusive evidence that "the seller knows the buyer has an illegal object and enterprise" (l. c. 711, 63 S.Ct. l. c. 1269).

Direct Sales Co. also established finally that "the mere fact that none [of the individuals involved] ever met * * face to face or held personal communion * * * is immaterial" (l. c. 714, 63 S.Ct. l. c. 1271) and that when the evidence discloses "a system, working in prolonged cooperation with a [buyer's] unlawful purpose to supply him [the buyer] with his stock in trade for his illicit enterprise, there is no legal obstacle to finding that the supplier not only knows and acquiesces, but joins both mind and hand with him to make its accomplishment possible" (l. c. 713, 63 S.Ct. l. c. 1270).

Under such factual circumstances, established beyond reasonable doubt, even in a conspiracy case, Direct Sales Co. teaches that "[t]he step from knowledge to intent and agreement may be taken." In such a case "[t]here is more than suspicion, more than knowledge, acquiescence, carelessness, indifference, lack of concern. There is informed and interested cooperation, stimulation, instigation" (l. c. 713, 63 S.Ct. l. c. 1270).

Still another line of decisions command that the step from knowledge to intention be taken, assuming again that specific criminal intent is a necessary element of the misdemeanor offense charged in Count VIII. Persons experienced in the liquor business, dealing as they are with a restricted commodity, can not claim that they were ignorant of facts that even minor investigation would make obvious. A refusal on defendants' part and therefore their failure to conduct any investigation under the circumstances revealed in this case is compelling evidence of the assumed required specific intent. Perhaps another conclusion would be suggested if the commodity involved—liquor—were not a legally restricted commodity; but such a case is not before the Court. We must deal with facts before us.

Spurr v. United States, 174 U.S. 728, 19 S.Ct. 812, 43 L.Ed. 1150 (1899), involving violation of the banking laws —a crime in which "wrongful intent is the essence of the crime" (l. c. 735, 19 S.Ct. l. c. 815)—holds that when a bank officer certifies a check when no money is in fact in the bank "such officer not only certifies unlawfully, but the specific intent to violate the statute may be imputed" (l. c. 735, 19 S.Ct. l. c. 815).

That case, involving a non-restricted commodity, holds that an "evil design may be presumed if the officer purposely keeps himself in ignorance of whether the drawer has money in the bank or not, or is grossly indifferent to his duty in respect to the ascertainment of that fact" (l. c. 735, 19 S.Ct. l. c. 815).

Defendants Filardo and Vogliardo contend that they did not know any of the Osadcheys; that they were ignorant of the actual operation of the defendant Club; and that they did not know for whom Mitchell, Hogan and defendant William Osadchey were acting as errand boys. It is, however, established beyond reasonable doubt that defendants Filardo and Vogliardo were in a position to know, and they obviously did know, enough about that in which they were participating for them to have estab-

lished a substantial line of credit and to deliver substantial quantities of liquor to persons who were, so far as they knew, not financially responsible for the deliveries.

The Internal Revenue laws of the United States placed a duty upon defendants Filardo and Vogliardo not to sell to other retail dealers. They knew they were dealing with a restricted commodity. Their entire conduct establishes beyond reasonable doubt that they were grossly indifferent to that duty imposed on them by law. All of the facts and circumstances command that we take the "step from knowledge to intent", to borrow the language of, and to apply the principle discussed in, Direct Sales Co. (page 713 of 319 U.S., 63 S.Ct. 1265).

Accordingly, a verdict of guilty will be entered in regard to Count VIII.

## Counts IX and X —

Alleged Violations of Section 5691(a) of Title 26 United States Code, by Defendants Filardo and Vogliardo

There can be no doubt but that Counts IX and X require proof beyond a reasonable doubt of a felonious intent. The statute expressly provides that "[a]ny person who shall carry on the business of a * * * wholesale dealer in liquors * * * and willfully fail to pay the special tax as required by law" shall be guilty of the offense.

There is an obvious difference between the language used to state the misdemeanor offense defined in Section 203 (c) (1) of Title 27 United States Code, (making it unlawful "to engage in the business of purchasing for resale at wholesale") and the language used to state the felony offense defined in Section 5691 of Title 26 United States Code (making the willful failure to pay the special tax by a person "who shall carry on the business of a * * * wholesale dealer in liquors" an unlawful act).

It cannot be said that the difference in language is without significant meaning. In the field of collection of liquor taxes, as in the field of collection of

income taxes, the Congress has imposed a variety of sanctions for the protection of the system and its revenues. Spies v. United States, 317 U.S. 492, at 495, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943), relating to the collection of income taxes where a similar system of graduated sanctions exists, noted that it "is not easy to detect or define * * * the difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony." We believe a similar line—and one as difficult to detect and define—exists between the two statutes relating to liquor involved in this case, one of which carries a misdemeanor penalty, and the other a felony penalty.

Spies, in ruling the not dissimilar problem involved in the collection of income taxes, noted that proof of an offense either under the misdemeanor section or under the felony section, required proof of a "willful" act. But Spies was careful to point out that a "[w]illful but passive negligence of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony."

We cite Spies not as controlling this case but to point up the difficulty of detecting and defining what we believe must be a line that the Congress intended to exist between carrying on the business of a wholesale dealer in liquors, which it made a felony, and engaging in the business of purchasing liquor for resale, which it made a misdemeanor.

We have no reasonable doubt but that the Government sustained its burden of proof in connection with the misdemeanor offense alleged in Count VIII. It is our judgment, however, that proof of a pattern of sales to a single dealer is not sufficient to establish the felony defined in Section 5691. We believe, for reasons similar to those stated in Spies, that the Congress must have intended that Section 5691 would not be violated unless the offender was, in

fact, carrying on a more extensive sort of business than that which would convict him of a violation of the misdemeanor defined in Section 203(c).

Supreme Malt Products Co., supra, held that evidence of a single sale, made openly to the social club there involved, would not support a finding that a defendant was engaged in the business of selling liquor at wholesale in violation of the misdemeanor offense. We think that case was correctly decided on its facts.

In ruling Count VIII, however, we concluded that all the facts and circumstances of this case established beyond a reasonable doubt required that this case must be placed on the side of the line closer to Eastman than to Supreme Malt Products Co.

But in making judgment on whether the Government has established beyond reasonable doubt that several sales to a single customer is sufficient to establish that the defendants did in fact "carry on the business of a * * wholesale dealer in liquors", within the meaning intended by the Congress in the language it used in Section 5691 of Title 26, we must conclude that such evidence is not sufficient to establish a violation of that felony statute.

Nor do we believe that the presumption established by subparagraph (b) of Section 5691 is intended to eliminate the necessity of establishing more than several sales to a single customer. Our reaction to the evidence at the time of trial, all of which has been confirmed by our close study of the entire transcript, was that defendants Filardo and Vogliardo were most cooperative in becoming the new source of liquor supply for the defendant Club but that the extent of their purchases for resale at wholesale was limited to the accomplishment of that purpose. We do not believe that such evidence is sufficient to support a finding that these two defendants were in fact carrying on the business of a wholesale dealer in liquors within the

meaning of the felony statute involved in the counts under discussion.

Accordingly, verdicts of acquittal will be entered in connection with Counts IX and X of the indictment.

#### Counts XII and XIII —
Alleged Violations of Section 5603(a) of Title 26 United States Code by Defendants Filardo and Vogliardo and Defendant Club

We find and determine that the evidence adduced by the Government in connection with the above Counts is insufficient to sustain any finding other than that of not guilty. Such a finding makes it unnecessary to review the evidence adduced by the Government in connection with these counts.

We think, however, that the Government's suggestion, made first at trial and repeated in its written brief, that we consider whether the evidence was sufficient to sustain a conviction of the lesser offense defined in Section 5603 (b) of Title 26 United States Code, is indicative of the weakness of the Government's case in regard to these two counts.

A verdict of not guilty will accordingly be entered in connection with each of Counts XII and XIII.

#### Direction of Further Proceedings

At the close of the trial the Government moved to dismiss Counts XI, XV and XVI. At the close of trial we indicated to counsel that we knew of no reason why the Government's motion should not be sustained (Tr. 504), and the final order and judgment will so provide.

The findings of fact and conclusions of law stated in the foregoing Memorandum Opinion shall serve as the Court's findings and conclusions in this case.

In addition thereto, we accept the Government's suggested findings of fact as they are stated in paragraphs 1 through 49, inclusive, excepting paragraphs 6 and 28, as listed under Count I. The other suggested findings, listed under Count I are rejected.

We also accept the suggested findings of fact as listed under Counts II through VII and Count VIII.

Our acceptance of the respective paragraphs 1 of the substantive counts is intended only to incorporate by reference only paragraphs 1 through 49, excepting paragraphs 6 and 28, that were accepted under Count I. The fact that we accept, for example, paragraph 1 under Count II is not to be taken to mean that paragraphs 6 and 53, both refused under their Count I listing, are to be taken as accepted; they are not. The same thing is true, of course, of the other substantive counts.

In order that the record be clear it will show that all the other findings of fact and all the other conclusions of law suggested by any of the parties will be rejected. Many of the suggestions made by all of the parties are quite consistent with what we find and conclude elsewhere. Our refusal of the detailed suggestions is not intended to alter what we have done elsewhere. We believe, however, that acceptance of more of the parties' suggestions would tend to complicate rather than clarify what is a relatively simple case.

The date for sentencing is set for August 21, 1964, at 9:30 a. m.

The Probation Office is directed to make the usual presentence examination and to submit the same to the Court.

Defendants are given leave to file, in writing with the Probation Officer, for transmittal to the Court, any statement on behalf of their respective clients and to present any information in writing in mitigation of punishment they may care to file. Said filings, if made, shall be made on or before August 17, 1964. Copies of such statement and information shall not be served on the Government.

The Clerk shall immediately prepare and submit for our signature a form of verdict in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure for the recording of our general findings. That verdict shall be dated this day.

Judgment, of course, will not be entered until after sentence, but the further conduct of this proceeding shall be in accordance with the directions just stated.

It is so ordered.