**UNITED STATES of America,
Plaintiff,**

v.

**Allie Eugene JOHNSON
and
Betty Lou Hill, Defendants.
No. 23441–1.**

United States District Court,
W. D. Missouri, W. D.

Dec. 7, 1971.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Robert G. Duncan, Kansas City, Mo., for Betty Hill.

Commodore M. Combs, Jr., Kansas City, Mo., for Allie Johnson.

MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

I.

This case pends on the separate post-trial motions of defendant Johnson and

defendant Hill. Both of these defendants were found guilty by a jury of both counts of a two-count indictment. Count I alleged violations of 18 U.S.C. § 371, and Count II alleged violations of 18 U.S.C. §§ 2, 2113(a), (d). Both defendants now seek orders setting aside their respective verdicts of guilty on both counts of the indictment and the entry of a judgment of acquittal, or, in the alternative, an order granting a new trial.

Defendant Johnson's motion for acquittal in regard to Count I, the conspiracy count, will be granted; both his motions directed to Count II, the aiding and abetting count, will be denied. Defendant Hill's motion for acquittal in regard to Count I will be granted; her alternative motion for a new trial in regard to Count II will also be granted.

## II.

This case is an excellent example of the complications which almost automatically result when the government insists that a count alleging conspiracy to commit the substantive offense be submitted to the jury simultaneously with a count alleging the violation of the same susbtantive offense.

The Supreme Court of the United States has long directed attention to the dangers inherent in the indiscriminate use of conspiracy counts and has, without complete success, admonished prosecutors to avoid broadside use of what is now Section 371, Title 18, United States Code. It was in United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1940), that the sweep on a conspiracy count was described as a "dragnet." In his oft-cited concurring opinion in Krulewitch v. United States, 336 U.S. 440, 445, 69 S.Ct. 716, 719, 93 L.Ed. 790 (1949), Mr. Justice Jackson, joined by Mr. Justice Frankfurter and Mr. Justice Murphy, noted "the unavailing protest of courts against the growing habit to indict for conspiracy in lieu of prosecuting for the substantive offense itself, or in addition thereto, suggests that loose practice as to this offense constitutes a serious threat to fairness in our administration of justice."

Mr. Justice Jackson cited the 1925 Report of the Conference of Senior Circuit Judges, presided over by Chief Justice Taft, and Judge Learned Hand's observation in United States v. Falcone, 109 F. 2d 579, 581 (2 Cir. 1940), in support of that observation. Judge Hand stated in *Falcone* that " * * * so many prosecutors seek to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders. That there are opportunities of great oppression in such a doctrine is very plain, and it is only by circumscribing the scope of such all comprehensive indictments that they can be avoided."

The following quotation from 336 U.S. page 453, 69 S.Ct. 716 of Mr. Justice Jackson's opinion in *Krulewitch* accurately describes the difficulties encountered at the start of the trial of this case:

When the trial starts, the accused feels the full impact of the conspiracy strategy. Strictly, the prosecution should first establish *prima facie* the conspiracy and identify the conspirators, after which evidence of acts and declarations of each in the course of its execution are admissible against all. But the order of proof of so sprawling a charge is difficult for a judge to control. As a practical matter, the accused often is confronted with a hodgepodge of acts and statements by others which he may never have authorized or intended or even known about, but which help to persuade the jury of existence of the conspiracy itself. In other words, a conspiracy often is proved by evidence that is admissible only upon assumption that conspiracy existed. The naive assumption that prejudicial effects can be overcome by instructions to the jury, cf. Blumenthal v. United States, 332 U.S. 539, 559, 68 S.Ct. 248, 257 [92 L.Ed. 154], all practicing lawyers know to be unmitigated fiction. See Skidmore v. Baltimore & Ohio R. Co., 2 Cir., 167 F.2d 54. [336 U.S. at 453, 69 S.Ct. at 723]

It is appropriate to add what Mr. Justice Jackson stated in regard to how the legal questions created by combining conspiracy and substantive counts should be viewed after verdict:

> There is, of course, strong temptation to relax rigid standards when it seems the only way to sustain convictions of evildoers. But statutes authorize prosecution for substantive crimes for most evil-doing without the dangers to the liberty of the individual and the integrity of the judicial process that are inherent in conspiracy charges. We should disapprove the doctrine of implied or constructive crime in its entirety and in every manifestation. And I think there should be no straining to uphold any conspiracy conviction where prosecution for the substantive offense is adequate and the purpose served by adding the conspiracy charge seems chiefly to get procedural advantages to ease the way to conviction. [Ibid, at 457, 69 S.Ct. at 725]

In United States v. Cole et al., (8 Cir., 1971) 449 F.2d 194, the Eighth Circuit noted that "the substantive crime of conspiracy and that of aiding and abetting are separate offenses" (page 201, footnote 4). The government in the trial of that case effectively avoided the complications presented by this case; it elected to abandon its conspiracy count immediately before the case was submitted to the jury. The Court of Appeals rejected a double jeopardy claim similar to that made by the defendants in this case and affirmed the aiding and abetting count against all three defendants. The government elected not to follow that course in this case. It is therefore necessary that we deal separately with the impact of the government's dual submission to the jury of a conspiracy count and a substantive count on each defendant.

### III.

The reasons for granting defendant Johnson's motion for acquittal on the conspiracy count need be but briefly outlined. Much of what we shall say in regard to the sufficiency of the evidence to support defendant Hill's conviction under the conspiracy count could be said to be applicable to defendant Johnson. It must, however, be recognized that a much closer question is presented in regard to the substantiality of the evidence adduced against defendant Johnson in regard to Count I.

■ Quite practical considerations of judicial administration dictate that any question of doubt in regard to the sufficiency of the evidence as to the conspiracy count be resolved in favor of defendant Johnson. A determination in his favor in regard to Count I effectively eliminates any and all questions concerning that count on direct appeal or in any potential postconviction proceeding. Conservation of judicial time is a factor which may properly be considered, particularly when under the circumstances of a particular case, it is quite apparent that an acquittal on one count of a multi-count indictment can not affect the eventual disposition of the case.

Defendant Johnson is subject to a maximum sentence of twenty-five years under Count II of the indictment. Count I carries only a maximum sentence of five years. Section 3206 of the Study Draft * of the new Federal Criminal Code recommends that the authority of a federal court to impose either concurrent or consecutive sentences be continued. Consistent, however, with almost

---

\* The National Commission which proposed the draft of the new Federal Code was composed of Governor Edmund G. Brown of California, Chairman; Congressman Richard H. Poff of Virginia, Vice Chairman; Judge George C. Edwards, Jr.; Judge A. Leon Higginbotham, Jr.; Senator Roman L. Hruska of Nebraska; Congressman Robert W. Kastenmeier of Wisconsin; Judge Thomas J. MacBride; Senator John L. McClellan of Arkansas; and Congressman Abner J. Mikva of Illinois. Donald Scott Thomas, Esq., of Texas, and Theodore Voorhees, Esq. of the District of Columbia, Judge James M. Carter and Congressman Don Edwards served for a time as members of the Commission.

universal practice Section 3206 effectively codifies the rule that the court shall not impose consecutive sentences for separate offenses which were committed as part of a single course of conduct.

In recognition of the sentencing principle that the imposition of a consecutive sentence must involve an exceptional situation, Section 3206 further provides that "the court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense, and the history and character of the defendant, it is of the opinion that such a term is required because of the exceptional features of the case, for reasons which the court shall set forth in detail."

■ This case cannot fairly be said to involve any exceptional features. It is a routine aider and abettor bank robbery case. It would be impossible to set forth any conceivably valid appropriate reason to impose a consecutive sentence under the circumstances. It is obvious, therefore, that the ultimate disposition of this case would not be affected by the denial of defendant Johnson's motion for acquittal in regard to Count I, since if any sentence were imposed in regard to Count I it would be a concurrent, rather than a consecutive sentence. On the other hand, the granting of defendant Johnson's motion for acquittal effectively removes from the case questions which may, on future appeal, require another trial in regard to defendant Johnson. Defendant Johnson's motion for acquittal in regard to Count I will therefore be granted.

■ Defendant Johnson's motions in regard to Count II must be denied because it is clear that sufficient evidence was adduced to support his conviction under that aider and abettor count. We are convinced that defendant Johnson was not prejudiced by the simultaneous trial of both counts. None of the evidence admitted to establish the conspiracy alleged in Count I can be said to have prejudicially affected defendant Johnson's right to a fair trial on the aiding and abetting count. Unlike the situation presented in regard to defendant Hill, the government did not adduce any hearsay testimony with respect to defendant Johnson to support its charge against him under either count.

In reversing an aiding and abetting bank robbery conviction in United States v. Kelton, (8 Cir., 1971) 446 F.2d 669, the Eighth Circuit relied upon United States v. Barber, (3 Cir., 1970) 429 F.2d 1394, 1397. In *Kelton* there simply was no evidence adduced which proved anything more than the presence of the defendant in an apartment at the time the robbery was planned; the evidence failed to place the defendant in the bedroom of that apartment in which the planning took place. The factual situation in *Barber* also established only the mere presence of the defendant and failed to show that he had associated himself or had in any way participated in the offense with others.

As footnote 4 on page 1397 of *Barber* shows, the amount of intent and action on a defendant's part necessary to sustain an aiding and abetting conviction is not great. Chief Judge Hastie observed that "even remaining with a group after disclosure of the intention of members of the group to commit a crime has been held to be sufficient evidence of association with the criminal venture."

Certainly defendant Johnson's theft of a car which was to be used as a get-away car, standing alone, is sufficient evidence to support his conviction under Count II. Defendant Johnson's motions in regard to that count will therefore be denied.

### IV.

A quite different situation is presented in regard to defendant Hill's motions. We have concluded that the government failed to adduce sufficient evidence to support defendant Hill's conviction under the conspiracy count (Count I). The government's failure to prove that defendant Hill was in fact a member of a conspiracy means that the hearsay statements of her alleged co-conspirators were

not admissible in evidence. Such hearsay, however, was admitted and, in our judgment, could have materially influenced the jury's verdict of guilty in regard to Count II, the aider and abettor count.

The prejudicial nature of this admission of Joe Charles Green's hearsay statement in regard to defendant Hill makes it impossible for us to say that the error was harmless. Defendant Hill is therefore entitled to a new trial in regard to the aider and abettor count.

 In regard to the conspiracy count, it is obvious that the government was under duty to adduce a greater quantum of evidence to support a conviction for conspiracy than that required to sustain a verdict for aiding and abetting. United States v. Kelton, *supra*, establishes that proof of mere association with the actual offenders and proof of mere presence at the scene of a crime, as opposed to proof of some additional act of participation, is not sufficient even to support a verdict of aiding and abetting. In regard to the quantum of evidence necessary to support a conspiracy conviction, Tinsley v. United States, (8 Cir., 1930) 43 F.2d 890, 892, makes clear that "a person does not become a part of a conspiracy by knowledge that another is about to commit a crime, or necessarily by an acquiescence in the crime." Reference was made in Tinsley to Linde et al. v. United States, (8 Cir., 1926) 13 F.2d 59, 61, which was stated as holding that "where defendants were charged with being parties to a general plan or conspiracy * * * the evidence must convince that they did something more than participate in the substantive offense which was the object of the conspiracy."

 *Linde* also makes clear that besides proof of the substantive offense, "there must, in addition thereto, be proof of the unlawful agreement." See Graham v. United States (8 Cir., 1926), 15 F.2d 740, 742, upon which *Tinsley* also placed reliance. Whether the government adduced sufficient evidence to support defendant Hill's conspiracy conviction depends entirely upon the testimony of Frank Marcelis White, Jr., one of the armed bank robbers who actually entered the bank. It is settled, of course, that his testimony must be considered in a light most favorable to the government and that a conviction may rest upon the uncorroborated testimony of an accomplice if that testimony is not otherwise unsubstantial on its face. See Williams v. United States, (8 Cir., 1964) 328 F.2d 256, 259.

██ The government's evidence in this case was insufficient either to prove defendant Hill was a member of the alleged August 13, 1970 conspiracy or that the defendant Hill became a party to that or any other conspiracy. The government alleged in Count I of the indictment that on August 13, 1970 defendants Johnson and Hill conspired with Frank Marcelis White, Jr., Lee Albert Stamps, Jr., Joe Charles Green, Ronald Udel West, and Mickey Milton Arrington to rob the Park National Bank. The government's evidence established, however, that neither the alleged co-conspirator West nor the alleged co-conspirator Arrington had anything to do with the robbery (Tr. 78–79). That evidence also established that one Roscoe King (who was fatally shot during the robbery) and a man identified only as Frank were in fact involved in the robbery.

More important, it is quite doubtful that any conspiracy would have been established even if the government's evidence had properly identified the actual participants of the alleged conspiracy. The evidence quite clearly established that Joe Charles Green "set the job up" (Tr. 52, 56, 76); that he assembled persons who would follow his instructions (Tr. 17, 51); and that various of the individuals did not even know each other until Green brought them together (Tr. 85–86).

The situation presented is not dissimilar from that presented in United States v. Mirror Lake Golf and Country Club, (W.D.Mo., 1964), 232 F.Supp. 167, 171,

in which one member of the group indicted "told the other members * * * what was going to be done; he did not ask them."

But even if it is assumed that the evidence could be said to support a finding that a conspiracy was in fact formed on August 13, 1970, it is clear that the government's evidence did not, by way of any direct evidence, connect defendant Hill with the events which took place on that day. Full acceptance of White's testimony on direct examination (Tr. 17 and 21) as to the instructions given Hill by Green does not establish that defendant Hill agreed to enter any such conspiracy. The possibility that Green was acting in a Fagin-like capacity rather than as a member of a conspiracy simply can not be ruled out under the circumstances of this case. See and compare United States v. Jones, (8 Cir., 1969) 418 F.2d 818, and Judge Van Oosterhout's comment on the holding of that case in United States v. Reed, (8 Cir., 1971) 446 F.2d 1226 at 1229–1230.

At trial, the government contended that it had made a *prima facie* case of conspiracy against defendant Hill by proving that "she was given instructions, she nodded her head, she understood and would comply with them" (Tr. 27). In its suggestions in opposition to the defendant's post-trial motions, it contends that the formal stipulation entered into by the parties (which established only that the bank was robbed by others than the defendants in this case) somehow supplied additional factual data to support a finding that defendant Hill became a member of a conspiracy, as distinguished from merely agreeing to follow instructions given her by Joe Charles Green, the man whom the government's evidence established was in complete charge of the robbery on August 14, 1970.

Defendant Hill's motion for acquittal in regard to Count I will therefore be granted.

## V.

Prejudicial error was injected into this case in regard to defendant Hill's trial on the aider and abettor count (Count II) as a result of the government's utilization of a trial theory that contemplated that once it established the existence of a conspiracy which came into being on August 13, 1970, it then would be able to also prove that defendant Hill "knowingly, willfully, and unlawfully" became a party to that conspiracy on August 14, 1970. As we have indicated, the government's evidence simply does not support any finding that defendant Hill possessed the requisite knowledge of any existing conspiracy or the requisite intent to become a party to any such assumed conspiracy. Nor was sufficient evidence adduced to support a finding that defendant Hill became a conspirator, as distinguished from an aider and abettor, on August 14, 1970.

The government's evidence clearly showed that White never saw the defendant Hill before August 14, 1970 (Tr. 70), and that defendant Hill was out of the room a considerable period of time with Brenda Williams, Joe Charles Green's girl friend (Tr. 39, 73–75). As pages 74 and 75 of the transcript show, Frank Marcelis White, Jr. had a much more vivid recollection of defendant Hill and the part she was to have played in the robbery when he testified at the trial of this case than he did when he testified before the grand jury. White testified before the grand jury that when Joe Charles Green and Lee Albert Stamp, Jr. brought defendant Hill to the apartment for the first time "she went in the other room with Brenda" Tr. 74 and 75). If White's grand jury testimony had been accepted by the government as the whole truth, defendant Hill presumably would have been treated in the same manner as Brenda Williams who was not even indicted.

It was the admission of another portion of White's grand jury testimony which injected prejudicial error in the trial of the aider and abettor count so far as defendant Hill was concerned. On three separate occasions the jury was advised of White's hearsay grand jury testimony that Joe Charles Green had

said, "We couldn't get Knucklehead to go yesterday but I called her last night and I am going to get her" (Tr. 71 and 105). The clear implication of that hearsay testimony was that the individual known to White as "Knucklehead" or "Shirley" before the grand jury, and as "Tackhead" at the time of trial, in fact had actual knowledge of some alleged conspiracy which commenced on August 13, 1970 and that she had, on that day, agreed to become a participant in an alleged continuation of that conspiracy on August 14, 1970.

Our conclusion that the government did not adduce sufficient evidence to support the conspiracy count as against defendant Hill makes it obvious that (a) we erred in not granting defendant Hill's motions for acquittal in regard to Count I at the close of the government's case and at the close of the evidence; and (b) that the admission of Green's hearsay statement in regard to his call to defendant Hill on August 13, 1970 was prejudicial to defendant Hill in regard to Count II of the indictment.

We cannot say that such error was harmless because we entertain more than a reasonable doubt as to whether the jury would have convicted defendant Hill except for its likely acceptance of Green's hearsay testimony. On the other hand, we believe that the government did make a case against defendant Hill under the aiding and abetting count, and that it is entitled to have that case submitted to another jury if it determines that such action is proper under all the circumstances.

We are confident that the government will carefully consider the principles articulated and applied in United States v. Kelton, *supra*, and the many cases cited in that case in determining whether it wants to retry defendant Hill on Count II of the indictment. See, for example, Johnson v. United States, (8 Cir., 1952) 195 F.2d 673, 675, which holds that the term "aiding and abetting" "assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed" and that the term aiding and abetting "implies some conduct of an affirmative nature and [that] mere negative acquiescence is not sufficient." See also Judge Learned Hand's oft-cited opinion in United States v. Peoni, (2 Cir., 1938) 100 F.2d 401, quoted by the Eighth Circuit in *Kelton*, which gives the full common law origin of the principles now codified in § 2 of Title 18, United States Code.

We believe it is obvious that the question of whether the government made a submissible case against defendant Hill for aiding and abetting is an extremely close question. It is possible that the government may be able to produce more evidence at a second trial. We have the feeling that whether it decides to continue the prosecution against defendant Hill may turn on the answer to that question. At any rate that is a matter for the United States Attorney to determine.

It is our conclusion that the law requires that the government shall have the right to make that determination because it is our judgment that defendant Hill's motion for acquittal should not be granted and that she is entitled only to a new trial on the aider and abettor count.

Accordingly, it is

Ordered that defendant Johnson's motion for acquittal in regard to Count I should be and is hereby granted but that his motions in regard to Count II should be and are hereby denied. It is further

Ordered that defendant Hill's motion for acquittal on Count I should be and is hereby granted. It is further

Ordered that defendant Hill's alternative motion for a new trial in regard to Count II should be and is hereby granted. At the government's request, this case will be placed on the next regular Division I—Division II criminal docket for trial.