Jean LANG, Plaintiff-Appellee,

v.

TEXAS & PACIFIC RAILWAY COMPANY and Missouri-Pacific Railroad Company, Defendants-Appellants.

No. 78-3383.

United States Court of Appeals,
Fifth Circuit.

Aug. 25, 1980.

Rehearing Denied Oct. 20, 1980.

Jack W. Flock, Mike Hatchell, Tyler, Tex., for defendants-appellants.

Franklin Jones, Jr., Marshall, Tex., for plaintiff-appellee.

Before FAY, KRAVITCH and RANDALL, Circuit Judges.

KRAVITCH, Circuit Judge.

Following a jury trial in this wrongful death action filed pursuant to the Federal Employers Liability Act (FELA), judgment was rendered for the plaintiff, the decedent's widow and personal representative. *Inter alia* the appellants, Texas & Pacific Railway Company and Missouri & Pacific Railway Company, on appeal attack: (1) capacity of appellee to sue; (2) sufficiency of the evidence; (3) refusal of the court to instruct the jury on the effect of income tax on the final award. For the reasons stated below, we affirm in part and reverse and remand in part.

*Facts*

At the time of his death Larry Lang, the appellee's decedent, had been employed as a switchman by the appellants for four years. On the night of his fatal injuries, Lang was engaged in switching railroad cars down particular access tracks to be later attached to other cars and engines. The procedure was for a switchman to release the cars by pulling the pin that attached them to more forward cars or the engine and let gravity operate to move the cars down the track. The evidence shows that Lang and his crew released two cars on Track 3. Lang then continued with the engine which proceeded on Track 4 parallel to the released cars. Because of its greater speed, the engine passed the two cars on Track 3. Immediately after the engine stopped, Lang jumped from the engine and attempted to cross Track 3. He was struck and killed, however, by the two cars that he had earlier released. Although there were no witnesses to Lang's death, the evidence showed

that the switching yard was poorly lit, the cars which struck Lang were not equipped with lights, and the area in which Lang's body was found was slick from accumulated oil. Over objection, Lang's foreman testified that possible causes of the accident were slippage of oil and poor lighting, and he knew of no contributory negligence on the part of Lang, although he had not witnessed the accident.[1]

Lang's widow brought this action against the railway companies individually, as next friend of her minor child and as representative of her deceased husband. She was not named administrator of the estate until after the jury verdict. The appellants, however, failed to plead lack of capacity. The jury returned a verdict in favor of the plaintiff in the amount of $913,000. The district court ordered a remittitur and the award was reduced to $600,000.[2]

*Capacity to Sue*

Pursuant to 45 U.S.C. § 51, an action under FELA may be maintained only by the deceased's "personal representative." The phrase "personal representative" has been construed to mean an executor or administrator of the deceased's estate, not simply an heir. *Briggs v. Walker*, 171 U.S. 466, 19 S.Ct. 1, 43 L.Ed. 243 (1898). At the time the suit was filed, the appellee, wife of the deceased, had not been appointed administrator of the estate. Indeed, she did not attain that status until after the jury verdict had been rendered but before the verdict was reduced to judgment. The appellants, however, failed to plead lack of capacity and only raised this ground in their motion for new trial after the verdict and judgment. The district court permitted the appellee to amend her pleadings to demonstrate capacity.

■ The appellants argue that because the appellee lacked the proper capacity throughout the trial, the trial and the verdict are nullities. We disagree. *See Reading Company v. Koons*, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835 (1926). It is true, as the appellants contend, that only a personal

representative may enforce the action. This limitation on enforcement, however, is not for the purpose of assuring that the proper party be before the court, but rather to assure all beneficiaries and heirs access to whatever funds might result from the litigation and to guarantee that the railroad will not be subject to multiple recoveries. Neither of those bases underlying § 51 are offended by permitting the appellee to amend her complaint after the trial has occurred. Moreover, it is apparent that the appellants have suffered no prejudice. The label affixed to the appellee is one of form not substance for the purpose of prosecuting the litigation. No new cause of action was involved nor were any different factual circumstances introduced. *See M.K.T. & R. Co. v. Wulf*, 226 U.S. 570, 577, 33 S.Ct. 135, 137, 57 L.Ed. 355 (1912). It would be a different situation if the appellee had never become the personal representative of the deceased because then the railroad could be subject to multiple recoveries. However, that case is not before us. Moreover, the appellants' failure to plead lack of capacity renders that objection waived. Rule 9(a) of the Federal Rules of Civil Procedure, although not requiring a plaintiff to aver capacity, does require a defendant to plead absence of capacity. *See Plumbers Local Union No. 519 of Miami v. Service Plumbing Company, Inc.*, 401 F.Supp. 1008 (D.C. Fla.1975). Therefore, because the appellants failed to plead the appellee's lack of capacity, they have now waived that objection.

*Sufficiency of Evidence*

■ The FELA allows recovery of damages for personal injuries to an employee of a railroad if the injuries resulted "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

---

**1.** *See* footnote 10.

**2.** *See* footnote 10.

45 U.S.C. § 51.[3] The evidence necessary to sustain a jury finding of negligence was the subject of the Supreme Court opinion in *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 750, 90 L.Ed. 916 (1946). In *Lavender* the Court was also confronted with a situation in which there were no eyewitnesses to the accident. The evidence demonstrated, however, that it could be reasonably inferred that the decedent had been struck by a protruding fixture on one of the railroad cars. The company argued that the decedent had been murdered. As in the instant case, the petitioner in *Lavender* contended that the jury verdict was the result of pure speculation. The Supreme Court answered this argument as follows:

> It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when the evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.

327 U.S. at 653, 66 S.Ct. at 744.

In the instant case the evidentiary basis for the jury's conclusion is manifest: the negligence of the appellants is demonstrated by the absence of lighting both in the switching yard and on the cars in question and by the accumulation of oil in the immediate vicinity of Lang's body. It was reasonable for the jury to infer causation, that Lang was struck either because he could not see the approaching cars or he did see the approaching cars but slipped on the oil or perhaps a combination of the two. The appellants were free to demonstrate factors from which the jury could infer contributory negligence, for example, that Lang was susceptible to fainting or a similar physical infirmity, that Lang was ill at the time he was working, or that Lang had been drinking. The appellants offered no such evidence and the appellants' foreman testified that he knew of no contributing factors. Because there is not a complete absence of probative facts, we reject the appellants' contention that there was insufficient evidence to support the verdict.

*Jury Instruction*

Finally, the appellants contend the trial judge erred in refusing to give a requested charge dealing with the effect of income taxation:

> If your verdict is in favor of the plaintiff, you will not increase or decrease the amount of your verdict by reason of federal income taxes, since the amount

---

**3.** Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States and Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce, or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

awarded the plaintiff, if any, is not taxable income to the plaintiff within the meaning of the tax laws.

Apparently, relying upon the settled law in this circuit, *see, e. g., Greco v. Seaboard Coastline R.R.,* 464 F.2d 496, 497 (5th Cir. 1972), *cert. denied,* 410 U.S. 990, 93 S.Ct. 1502, 36 L.Ed.2d 190 (1973), the district court refused the proffered charge. However, on February 19, 1980, subsequent to the trial and while the appeal was pending, the Supreme Court in *Norfolk and Western Railway Co. v. Liepelt,* —— U.S. ——, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), effectively changed the law in this area. In *Liepelt,* also a wrongful death action brought under FELA, the Court held that the trial court erred in refusing a requested jury instruction that "your award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award."[4] The Supreme Court reasoned that the average jury of laymen may not be cognizant that damages received as wrongful death awards are not taxable income to the recipient;[5] therefore, the jury may assume mistakenly that a plaintiff's recovery will be subject to federal taxation and thus substantially inflate the award.

▌ Appellee urges that (1) the appellants failed to object properly under Rule 51, Fed.R.Civ.Proc., to the trial court's refusal to give the requested charge, and (2) it would be improper for us to apply *Liepelt* retroactively. Rule 51 requires that for an objection to a jury instruction to be preserved for appeal, the objection and grounds must be stated distinctly after the charge and before the jury retires.[6] The purpose of the rule is to enable the trial court to correct any error it may have made before the jury begins its deliberations and thus avoid the necessity of a new trial. The rule is not without exceptions, however, and the failure to object may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing. 9 *Wright and Miller, Federal Practice and Procedure* § 2553, at 640.[7] At the time of the trial, the prevailing Fifth Circuit rule did not require submission of the requested charge. *Greco v. Seaboard Coastline R.R.,* 464 F.2d 496, 497 (5th Cir. 1972), *cert. denied,* 410 U.S. 990, 93 S.Ct. 1502, 36 L.Ed.2d 190 (1973). Therefore, the trial court having refused the proffered instruction, further objection by the appellants would have been fruitless.[8] As the Ninth Circuit stated in a similar situation: "An exception could not have permitted the district court to 'correct' the instructions. The instructions correctly stated the controlling law of the Circuit at the time they were given." *Robinson v. Heilman,* 563 F.2d 1304, 1307 (9th Cir. 1977).

▌ Nor do we agree with appellee that *Liepelt* should not have retroactive effect. Our duty is to apply the law in effect at the time we render our decision, unless to do so would result in "manifest injustice." *Bradley v. Richmond School Board,* 416 U.S. 696,

---

**4.** In *Liepelt* the Supreme Court also held that the trial court erred in excluding evidence offered to show the effect of income taxes on the decedent's estimated future earnings. Evidence of decedent's net income after taxes was not offered in *Lang;* this aspect of *Liepelt,* therefore, is not applicable.

**5.** I.R.C. § 104(a)(2); *see* Rev.Rul. 54–19, 1954–1 Cum.Bull. 179.

**6.** In relevant part, Rule 51 provides:
"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

**7.** *See Wallace v. Ener,* 521 F.2d 215, 218–19 (5th Cir. 1975).

This court also has held that an appellate court may reverse for plain error in an instruction that was not objected to, *Chagas v. Berry,* 369 F.2d 637, 641 (5th Cir. 1966), *cert. denied,* 389 U.S. 872, 88 S.Ct. 161, 19 L.Ed.2d 154 (1967), although that power will be exercised only in exceptional cases. *Delancey v. Motichek Towing Serv., Inc.,* 427 F.2d 897, 901 (5th Cir. 1970). We do not find that the failure to give the proffered instruction in the instant case was "plain error."

**8.** Appellants' argument that they made a proper objection after the charge to the jury is not supported by the record.

711–15, 94 S.Ct. 2006, 2016–2018, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *United States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801). We do not find that retroactive application of *Liepelt* to this case will result in "manifest injustice." [9]

■ We have considered the appellants' other citations of error but find them meritless.[10] We therefore affirm on the issue of liability. In the light of *Liepelt*, however, we find that the trial court erred in refusing to give the proffered charge.[11] Accordingly, we reverse and remand for a new trial on the issue of damages.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

9. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), cited by appellee, is a case in which retroactive application would have caused manifest injustice. In that case the plaintiff was injured in 1965 while working on an offshore drilling rig and brought suit for damages in 1968. While his case was pending in the trial court, the Supreme Court, in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), held that the Louisiana one-year statute of limitations, rather than the admiralty doctrine of laches, applied to actions such as the plaintiff's. In *Huson*, however, the Supreme Court declined to apply *Rodrigue* retroactively because application of the Louisiana statute of limitations would have deprived the plaintiff of any remedy whatsoever. In the instant case, on the other hand, no comparable hardship will result. Appellee is still entitled to a just and adequate recovery.

10. The appellants additionally argued that the district court erred in refusing to grant a retrial for excessiveness of damages or abused its discretion in failing to order a greater remittitur.

Finally, the appellants contended that the trial court abused its discretion in allowing the decedent's foreman to testify as to his conclusion on the cause of Lang's death. We hold that the court did not err in refusing to grant a retrial and that the amount of the remittitur was set within the limits of sound discretion. We also hold that the testimony of Lang's foreman was properly admitted. The conclusion of the lay witness was properly admitted as conducive to a clear understanding of the issue of causation of Lang's death. *See* Rules 701 and 704 of the Fed.R.Evid. Moreover, the jury was properly charged that they were the ultimate finder of fact.

11. We note that in *Cazad v. Chesapeake and Ohio Ry.*, 622 F.2d 72 (4th Cir. 1980), a case tried prior to *Liepelt* but pending on appeal when *Liepelt* was decided, the Fourth Circuit reversed for failure to give a proffered instruction which was substantially identical to the instructions required in *Liepelt*.