**Charles PETTY, Plaintiff-Appellant,**

v.

**IDECO, a DIVISION OF DRESSER INDUSTRIES, INC., Defendant-Appellee.**

**No. 83–2763.**

United States Court of Appeals, Fifth Circuit.

June 3, 1985.

Rehearing Denied July 3, 1985.

---

Robert Allen Moore, Barry L. Hart, Odessa, Tex., for plaintiff-appellant.

Cook, Davis & McFall, Richard A. Sheehy, Donald B. McFall, Kent C. Sullivan, Houston, Tex., for defendant-appellee.

Before GOLDBERG, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

In this Texas diversity case,[1] plaintiff Charles Petty sued defendant Ide-

---

1. Petty filed this action in the district court of Harris County, Texas. Ideco thereafter filed a petition for removal to federal district court on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1441, which was granted by the federal district court. At the time Petty's suit was filed, plaintiff was a citizen of Alabama and defendant Ideco was a citizen of Texas. Under § 1441(b), a case filed in state court that does not state federal question jurisdiction is removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought. It is clear from the record in this case that removal

to federal court was improper. However, it is equally clear that plaintiff at no time sought a remand to the state court. In his brief on appeal, plaintiff Petty asserts that "Plaintiff did not move to remand this action to [state court] although he could have done so ...," *see* Brief of Appellant at 2, but does not otherwise argue that the case should be remanded at this juncture. The federal district court would have had jurisdiction had the action been brought originally in federal court. *See* 28 U.S.C. § 1332(a)(1). Such being the case, we perceive Petty's failure to timely object to the improper removal as a waiver of the objection. *See*

co, a Division of Dresser Industries, Inc. (Ideco), on products liability theories for injuries that he sustained while working on an oil well servicing unit manufactured by Ideco. A jury returned a verdict that Petty take nothing from Ideco, and the district court entered judgment accordingly. On appeal, Petty contends that the trial court erred in admitting into evidence two videotapes prepared by Ideco's expert witness which purported to demonstrate the normal operation of the servicing unit in issue. He also argues that the court improperly excluded evidence of other manufacturers' design of similar units. Petty further asserts that the trial court improperly admitted evidence of Petty's prior criminal history. Petty finally alleges that the court's jury instruction on Texas' substantive products liability law constituted an improper comment on the evidence. Finding no reversible error in the judgment of the trial court, we affirm.

## I. BACKGROUND

In October 1980 Charles Petty was employed by Basin Well Service, Inc., of Odessa, Texas, a company that performs general repair work on oil wells. The company owned a "Back-in Rambler" well servicing unit which had been manufactured by Ideco in 1972. The Back-in Rambler is a large truck upon which a derrick and other equipment is mounted. The unit includes a "cathead," or round drum-like winch mounted on the side of the unit. The cathead is used as a hoisting device to lift and lower equipment at a well site. To lift a piece of equipment, the operator of the servicing unit wraps rope around the cathead, which revolves continuously to provide lifting action. The rope runs from the cathead, to a pulley at the top of the rig, to the object being lifted. The control panel for the Back-in Rambler is located near the rear of the unit.

On the day of Petty's accident, he and his crew were lifting a horsehead, which was a part of the pumping unit of the oil well that was being serviced. During this maneuver, Petty's left arm became entangled in a rope line that was wound around the cathead and he was dragged into the rotating winch. As a result, Petty's left arm was avulsed from his body at the mid upper arm.

Petty brought suit against Ideco on products liability theories, alleging defective design of the servicing unit and failure to advise purchasers of the safe manner of using the unit.[2] At trial, Petty proceeded on the theory that the unit was defective in its design because it did not have a "kill" switch near the cathead which could have been used to shut off the machine. In defense, Ideco maintained that Petty's injuries were a result of his own negligence in misusing the unit. In response to special interrogatories, the jury found that the well servicing unit was neither defectively designed nor marketed, and that Petty's own negligence was a proximate cause of his injuries.

## II. EVIDENTIARY RULINGS

### A. *Videotapes*

At trial, Ideco introduced into evidence two videotapes narrated by its expert witness, Charles Parker, purporting to show the normal operation of the servicing unit. In these tapes, Parker expressed his opinion as to what constituted prudent and safe operation of the unit.

On appeal, Petty contends that the videotapes in effect constituted a pretrial deposition of witness Parker; as such, he maintains that the tapes were improperly admitted because: the testimony was not sworn, plaintiff was given no notice of the "deposition," and there was no showing of exceptional circumstances permitting admission

*Stokes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 523 F.2d 433, 436 (6th Cir.1975); 1A Moore's Federal Practice ¶ 0.169[1] (2d ed. 1983).

2. Petty's original complaint alleged claims based on theories of negligence and products liability. Prior to trial, Petty abandoned his negligence theory and proceeded to trial solely on the basis of strict products liability.

of the tapes given the fact that Parker was present at trial. *See* Fed.R.Civ.P. 30, 32.

In countering Petty's assertions, Ideco argues that: (1) Petty failed to make a timely objection to the admission of the tapes at trial; (2) the videotapes were a demonstration and the expert's opinions were merely incidental to the main purpose of the tapes; (3) there was no prejudice to Petty since he was permitted to cross-examine Parker at trial; and (4) even if the tapes were improperly admitted, such admission is not reversible error.

Petty had the opportunity to view the videotapes before their introduction by Ideco at trial. Following his viewing of the tapes, Petty requested that the court entertain his objections to their admission out of the presence of the jury. Petty's objections pertained to relevancy, competency of Parker to testify as an expert, and surprise. The trial court treated the objections as a motion in limine, which it denied. In so doing, the court stated: "If you have got some specific objections as the tape is rolling, I will hear them. These tapes can be stopped ... you can cross examine him [Parker]. I will let you voir dire him on his qualifications to testify about how to use that piece of equipment." Record Vol. X at 226. The record shows that Petty wholly failed to renew his objections when the tapes were thereafter shown to the jury.

■ In order to preserve error for appellate review, a proper objection must be made at trial. Fed.R.Evid. 103(a)(1). Thus, a party whose motion in limine is overruled must renew his objection when the error he sought to prevent is about to occur at trial. *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir.1980); *see also Rojas v. Richardson*, 703 F.2d 186, 189 (5th Cir.) *reh'g granted on other grounds*, 713 F.2d 116 (1983). Ideco contends that Petty's failure to renew his objections when the tapes were shown to the jury precludes appellate review. Ideco further urges that since Petty's motion in limine did not raise the specific objections raised on this appeal, our review of plaintiff's claims concerning Fed.R.Civ.P. 30 and 32 is also precluded. *See*

*Complete Auto Transit, Inc. v. Wayne Broyles Engineering Corp.*, 351 F.2d 478, 483 (5th Cir.1965) (since ground on which appellant attacked evidence on appeal was not specifically stated in its objection at trial, error, if any, committed by trial court in overruling such objection was waived by appellant); *accord Shingleton v. Armor Velvet Corp.*, 621 F.2d 180, 183 (5th Cir. 1980).

■ Notwithstanding Petty's failure to preserve the alleged error in the admission of the tapes for appellate review, Fed.R. Evid. 103(d) provides that: "[n]othing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." The "plain error rule" is an extraordinary remedy which is invoked only in exceptional circumstances to avoid a miscarriage of justice. *Rojas v. Richardson*, 703 F.2d at 190. This Court has defined plain error as error which is "obvious and substantial." *Id.* (citations omitted). Ultimately, though, the determination rests on the facts of the individual case. *Id.*

Rule 402 of the Federal Rules of Evidence provides that, with certain specific exceptions, all relevant evidence is admissible. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed.R. Evid. 401. As noted previously, Ideco's theory of the case was that Petty's injuries were a result of Petty's own negligence in misusing the servicing unit. The videotapes were not offered to reenact the accident, but were presented to show the normal operation of the unit. It cannot be said that they were not germane to disputed issues at trial.

■ Whether to admit or exclude demonstrative evidence is a matter within the sound and broad discretion of the district court. *See Young v. Illinois Central Gulf Railroad Co.*, 618 F.2d 332, 338 (5th Cir. 1980) (motion picture experiment was ad-

missible to show physical possibility of decedent's car being diverted onto railroad track); *Sanchez v. Denver & Rio Grande Western Railroad Co.*, 538 F.2d 304, 305–06 (10th Cir.1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977) (motion picture admissible to depict reenactment of accident); *Zurzolo v. General Motors Corp.*, 69 F.R.D. 469, 473 (E.D.Pa. 1975) (film admissible to demonstrate principles of physics). *Cf. Johnson v. William C. Ellis & Sons Iron Works*, 604 F.2d 950, 958 (5th Cir.1979) (motion picture that was cumulative of other evidence was properly excluded), *modified*, 609 F.2d 820 (1980). Further, evidentiary rulings of the trial court will be left undisturbed unless an abuse of discretion results in substantial prejudice to the rights of a party. *Goff v. Continental Oil Co.*, 678 F.2d 593, 596 (5th Cir.1982). Despite the foregoing, strong arguments could have been advanced against the admission of the tapes at trial.

 Those strong arguments were never appropriately advanced, however, because Petty wholly failed to object to the admission of the videotapes at trial. Furthermore, even though the trial court explicitly advised Petty that he would be permitted to stop the tapes at any time to make specific objections, no objections of any nature were forthcoming. Petty here fails to demonstrate any justification for his failure to object to the admission of the videotapes at trial. Being limited to a review of plain error, we have found no such error in the trial court's admission of the videotapes. On this record and under the circumstances described, we cannot say that the trial court abused its discretion in admitting the tapes.

### B. *Other Manufacturers' Design of Similar Units*

The Back-in Rambler on which Petty was injured was manufactured in 1972. Petty asserts that the trial court improperly excluded evidence indicating that other manufacturers had, before 1972, placed emergency engine cut off or "kill" switches near the cathead on similar units. Petty maintains that Ideco's failure to include a kill switch near the cathead rendered the unit defective.

Ideco conceded that it was feasible to place a kill switch near the cathead but argued that the failure to do so did not render the unit defective. Ideco's expert witnesses testified to this effect. On the other hand, Petty's expert witnesses testified that Ideco should have placed a kill switch at the cathead and that the absence of the switch at that location made the unit unreasonably dangerous. The trial court excluded, however, testimony as to the practice of other manufacturers.

 Petty attempted to introduce evidence of other manufacturers' placement of kill switches at the cathead on similar units through the testimony of one of his expert witnesses, Philip Blake. Ideco's counsel objected to the admission of Blake's testimony on grounds of relevancy. At this point the court held a bench conference. During the bench conference Petty made no proffer of what evidence his expert witness would have presented, if permitted to testify. The trial court then sustained Ideco's objection. Even as the court prepared to resume trial after the bench conference, no proffer of what evidence his expert was prepared to present was made by Petty. On appeal, "[e]rror may not be predicated upon a ruling which ... excludes evidence unless ... the substance of the evidence was made known to the [trial] court by offer...." Fed.R.Evid. 103(a)(2). Where no offer of proof appears of record, there is no way that a party can demonstrate that his substantial rights have been affected. 21 C. Wright and K. Graham, Federal Practice and Procedure § 5040, at 210 (1977); *see* Fed.R.Evid. 103(a). Under the circumstances of the case *sub judice*, the issue is foreclosed from our review. *See Young v. City of New Orleans*, 751 F.2d 794, 797 (5th Cir.1985); *Espino v. City of Kingsville*, 676 F.2d 1075, 1078 (5th Cir.1982).

### C. *Petty's Prior Felonies*

 Petty was convicted of armed kidnapping in Texas in 1974 and was given a

suspended three-year sentence. After violating the conditions of his probation, Petty's probation was revoked and he was imprisoned until 1977. Petty was also convicted of issuing a check with the intent to defraud in New Mexico in 1980. He was given a one-to-three year prison sentence for this offense. Petty made a motion in limine to exclude proof of these crimes from evidence, which the district court denied.[3]

■ Petty asserts that the district court did not apply the balancing test of Fed.R. Evid. 609(a)(1)[4] in admitting into evidence his kidnapping conviction. In response, Ideco contends that Rule 609(a)(1) does not apply to plaintiffs in civil cases. This contention is unfounded. In *Howard v. Gonzales*, 658 F.2d 352, 358–59 (5th Cir.1981), a civil rights action under 42 U.S.C. § 1983, this Court indicated that the determination of whether to allow or disallow use of a conviction based upon whether its probative value exceeds its prejudicial effect is within the trial court's broad discretion. *Cf. Shows v. M/V Red Eagle*, 695 F.2d 114, 119 (5th Cir.1983) (Jones Act plaintiff—without citing *Howard*, Court reserved issue of applicability of balancing test of Rule 609(a)(1) to litigants in civil cases).

■ In his motion in limine to exclude admission of evidence concerning his kidnapping conviction, Petty made general assertions that the prejudicial effect of the evidence far outweighed its probative value. In its memorandum of law in support of admission of this evidence, Ideco maintained that evidence of Petty's conviction for kidnapping was admissible for the purpose of impeaching plaintiff's credibility. In light of the fact that the district court had these opposing motions before it, ac-

companied by the parties supporting memoranda, we are unpersuaded by Petty's assertion that the district court did not engage in any balancing exercise under Rule 609(a)(1). While we note that the prejudice/probativeness balance is close in this case, we cannot say that the district court abused its broad discretion in admitting evidence of the kidnapping conviction.

■ The check passing conviction (with "intent to defraud") is clearly admissible under Rule 609(a)(2) as a crime involving "dishonesty or false statement." *See* Fed.R. of Evid. Conference Rep. No. 83–1597, 93rd Cong. 2d Sess. 9 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News, 7051, 7098, 7103 ("crimes such as ... criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness or falsification ..."). The balancing test of Rule 609(a)(1) does not apply to such convictions. *Shows*, 695 F.2d at 119.

### III. JURY INSTRUCTION

■ The court charged the jury in part: "You are instructed that a manufacturer is not an insurer of the product it designs, and it is not required that the design adopted be perfect, or render the product accident-proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product." Record Vol. I at 16.

Petty admits that this instruction was a correct statement of Texas' substantive law. *See Acord v. General Motors Corp.*, 669 S.W.2d 111, 113–14 (Tex.1984); *see also*

---

**3.** This motion was sufficient to preserve the objection for appeal despite mention of these convictions by Petty's attorney in opening argument. *See Reyes v. Missouri Pacific R.R. Co.*, 589 F.2d 791, 793, n. 2 (5th Cir.1979).

**4.** Rule 609. *Impeachment by Evidence of Conviction of Crime*

(a) *General rule*—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted

if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, *and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant,* or (2) involved dishonesty or false statement, regardless of the punishment.

*Syrie v. Knoll International,* 748 F.2d 304, 307 (5th Cir.1984) (applying Texas law). He asserts, however, that this instruction constituted an improper comment on the evidence under the authority of *Acord,* 669 S.W.2d at 116 (deviation from Texas Pattern Jury Charges was harmful error).

 Petty made no objection to the portion of the charge which he now challenges on appeal. Nonetheless, relying on *Lang v. Texas & Pacific Railway Co.,* 624 F.2d 1275, 1279 (5th Cir.1980), he asserts that he should be excused from the contemporaneous objection requirement, Fed.R. Civ.P. 51, because *Acord* was not decided until after his trial was completed. Unfortunately, Petty misreads *Lang. Lang* held only that the "failure to object may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing." 624 F.2d at 1279. Since Petty made no objection to the charge at any time on the principle stated in *Accord,* he is not excused by the rule of *Lang.*[5] Furthermore, the instruction given by the district court is correct as a matter of federal law.[6] Hence, Petty may not avail himself of the plain error rule. *See Lang,* 624 F.2d at 1279, n. 7.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**5.** It should also be noted that the Texas Supreme Court did not consider itself to be announcing a new rule of law in *Acord,* but rather merely reiterating what should have been plain from its holdings in two previous cases. *See* 669 S.W.2d at 115–16. Thus, Petty cannot claim even the element of an unexpected change in governing law which is essential to the *Lang* exception.

**6.** In diversity actions, federal law governs procedural matters, *Rabon v. Automatic Fasteners, Inc.,* 672 F.2d 1231, 1238, n. 14 (5th Cir.1982), including the "form, manner and method" of instructing the jury. *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1289 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). *See also Martin v. Texaco, Inc.,* 726 F.2d

207, 216 (5th Cir.1984). The *Acord* rule does not appear to be a matter of substantive law—a rule of law that would cause "the character or result of [the] litigation materially to differ because the suit had been brought in a federal court." *Hanna v. Plumer,* 380 U.S. 460, 467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8, (1965).

In federal practice, the trial judge has wide discretion in formulating the charge provided that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law. *Rohner, Gehrig & Co. v. Capital City Bank,* 655 F.2d 571, 580 (5th Cir.1981). Since Petty admits that the instruction correctly set forth the definition of a product defect under Texas law, his claim of error is meritless.