**Harry A. BENDIBURG, Individually and as Administrator of the Estate of Carl Bendiburg, Deceased, Plaintiff–Appellant,**

v.

**Pamela S. DEMPSEY, et al., Defendants–Appellees.**

No. 92–9231.

United States Court of Appeals, Eleventh Circuit.

April 21, 1994.

---

Harold Dennis Corlew, Walls & Corlew, Paul D. Hermann, Walbert & Hermann, Atlanta, GA, for plaintiff-appellant.

William C. Joy, Asst. Atty. Gen., Mary Foil Russell, Bruce McCord Edenfield, Hicks Maloof & Campbell, Victoria H. Tobin, Hendrick Spanos & Phillips, Atlanta, GA, Jerry Lovvorn Gentry, Office of Cobb County Attorney, Law Dept., Marietta, GA, Alan F. Herman, Freeman & Hawkins, J. Caleb Clarke, III, Culbreth & Sharony, Earl W. Gunn, Sidney F. Wheeler, Long Weinberg Ansley & Wheeler, Timothy Hal Bendin, Ralph Jerry Kirkpatrick, Eleanor Martell, Sullivan, Hall, Booth & Smith, Atlanta, GA, for defendants-appellees.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

## I. *Introduction*

Harry A. Bendiburg sued various state employees and private health care providers under 42 U.S.C. § 1983 (1988) for civil rights violations and for common law battery.[1] His claims arose out of the medical treatment of his son, Carl A. Bendiburg. The jury found some, but not all, of the remaining defendants liable and awarded $1.95 million in damages. Bendiburg appeals. We affirm.

## II. *Background*

### A. *Facts*

In its published order on motions for summary judgment, the district court explained the facts of this case in great detail. *Bendiburg v. Dempsey,* 707 F.Supp. 1318, 1321–23 (N.D.Ga.1989), *aff'd in part and rev'd in part,* 909 F.2d 463 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991). Thus, we need only summarize here.

Carl Bendiburg sustained serious injuries in a September 1985 automobile accident which claimed the life of his mother. Due to a compound fracture of his left leg, Carl developed osteomyelitis, a continuing bone infection, which required intravenous treatment with antibiotics. After several weeks,

---

1. Bendiburg also sued for the wrongful death of Carl A. Bendiburg. Appellant's Br. at 2.

Carl was discharged to home care. The repeated collapse of Carl's surface veins caused difficulty for Carl's home care nurses as they attempted to administer intravenously the antibiotics required to treat Carl's bone infection.

The difficulties with Carl's surface veins led his orthopaedic surgeon, Dr. Richard Cohen, to recommend administering Carl's antibiotics through a Hickman catheter. A Hickman catheter is a flexible tubular device inserted in the subclavian or jugular vein and threaded through a patient's veins to the juncture of the superior vena cava and the right atrium of the heart. Harry Bendiburg refused to allow the implantation of a Hickman catheter because he considered the procedure too risky.

After Harry Bendiburg refused to consent to the implantation, Nancy Harrison, the supervisor of Carl's home care nurses, contacted the Cobb County Department of Family and Children Services (DFACS). Harrison and Cohen spoke with DFACS employee Pamela S. Dempsey on various occasions. The jury found that Harrison and Cohen exaggerated the severity of Carl's medical condition in order to justify an *ex parte* petition seeking temporary custody of Carl so that a Hickman catheter could be implanted.

After conferring with her supervisor, Sue B. Terry, Dempsey prepared an *ex parte* petition to temporarily transfer custody of Carl to DFACS, which she then presented to the Cobb County Juvenile Court without notice to Carl's father. Sallie T. Walker, acting as a Judge Pro Tempore of the Cobb County Juvenile Court, entered an order temporarily transferring custody. Dempsey, acting on behalf of DFACS, then consented to the implantation of a Hickman catheter to administer Carl's antibiotics. Dr. Baheeg Shadeed performed the surgical implantation the next day. Custody was returned to Harry Bendiburg after a few days.

Less than two weeks later, Carl suffered a massive pulmonary embolus and died.[2] This action followed.

### B. *Procedural History*

Harry Bendiburg, individually and as the administrator of Carl's estate, filed suit in the district court, naming as defendants: (a) Dr. Cohen; (b) Cohen's professional corporation, Drs. Klaus, Cohen & Weil Orthopaedic Associates, P.C. ("the P.C."); (c) nurse Harrison; (d) Harrison's employer, Medical Personnel Pool of Atlanta, Inc. ("Med Pool"); (e) Cobb County DFACS; (f) three DFACS employees, Dempsey, Terry, and Nancy J. Pendergraft, in their official and individual capacities; (d) Walker, as Judge Pro Tempore of the Juvenile Court of Cobb County; (e) Cobb County itself; (f) Dr. Shadeed; and (g) Shadeed's employer, Adventist Health Systems/Sunbelt, Inc. Count I of his complaint asserted claims under 42 U.S.C. § 1983, alleging denial of Fourteenth Amendment substantive and procedural due process rights. Count II alleged the tort of battery under Georgia law.

Adventist Health Systems/Sunbelt was dismissed by stipulation early in the litigation. In 1988 the district court granted summary judgment in favor of Walker on grounds of judicial immunity. It also granted Cobb County's motion to dismiss because it concluded that Walker, as a Judge Pro Tempore of the juvenile court, acted as an official of the State, not Cobb County. The remaining defendants (Cohen, the P.C., Harrison, Med Pool, DFACS, Dempsey, Terry, Pendergraft, and Shadeed) later filed motions for summary judgment.

The district court found Bendiburg's substantive due process claim without merit. 707 F.Supp. at 1324–25. It granted summary judgment in favor of Dempsey, Terry, and Pendergraft in their official capacities and in favor of DFACS on the basis of Eleventh Amendment immunity. *Id.* at 1330–34. The court granted summary judgment in favor of Cohen, the P.C., Harrison, and Shadeed on the procedural due process claim because it concluded that Bendiburg did not present sufficient evidence of a con-

---

**2.** The jury found that the implantation of the Hickman catheter was not the proximate cause of Carl's death.

spiracy or the required joint action with the state employees necessary to support a claim of state action. *Id.* at 1326–30. Due to unresolved factual issues, the court denied summary judgment on the issue of qualified immunity, *id.* at 1326, and denied summary judgment on the battery claim. *Id.* at 1337–42.

On appeal, we affirmed the district court's judgment except with respect to its grant of summary judgment in favor of Cohen, the P.C., and Harrison on the procedural due process claim. We reversed the district court's grant of summary judgment in favor of those defendants, leaving Dempsey, Terry, and Pendergraft (individually), Cohen, the P.C., and Harrison as defendants on the procedural due process claim at trial.[3] Dempsey and Terry (individually), Cohen, the P.C., Harrison, Med Pool, and Shadeed were left as defendants on the battery claim.[4]

Subsequently, the case proceeded to trial in the district court. At the conclusion of the evidence, the court submitted the case to the jury on special interrogatories. The jury answered the court's interrogatories and returned a general verdict totalling $1.95 million against defendants Cohen, the P.C., Harrison, and Med Pool. The jury found in favor of the defendants Dempsey, Terry, Pendergraft and Shadeed.

### III. *Issue on this Appeal*

Bendiburg appeals, presenting issues with respect to defendants Dempsey, Terry, Pendergraft, and Shadeed, who prevailed at trial, and with respect to defendants Walker and Cobb County.[5] Bendiburg raises a multitude of issues, but only one merits discussion: Whether the district court erroneously submitted Dempsey and Terry's qualified immunity defense to the jury. For the reasons that follow, we affirm on that issue.[6]

---

**3.** Med Pool was excluded from Bendiburg's procedural due process claim. 707 F.Supp. at 1321 n. 2.

**4.** Pendergraft was excluded from Bendiburg's battery claim. 707 F.Supp. at 1321 n. 3.

### IV. *Discussion*

Throughout this litigation, defendants Dempsey and Terry have asserted the defense of qualified immunity. Their contention at trial was that reasonable public officials, possessing the knowledge they had, could objectively have believed that a medical emergency threatened the life, safety, or welfare of Carl, thus requiring the immediate filing of an *ex parte* petition to transfer custody of Carl to DFACS.

The district court considered the applicable law clearly established, saying: "[A] parent's interest in the custody of his or her child has been clearly established as a liberty interest under the fourteenth amendment for well over half a century," 707 F.Supp. at 1334 (citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) and *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 573–74, 69 L.Ed. 1070 (1925)). However, it also noted that "it is (and was) equally well established that state officials may temporarily deprive a parent of custody under narrow circumstances without prior notice or opportunity for hearing. Thus, the question becomes whether there was an objectively reasonable basis for defendants to believe Carl's life, safety or welfare were threatened...." *Id.* at 1335 (citations omitted).

With this legal standard in mind, the district court instructed the jury

> that the acts of these defendants in submitting the petition to the Cobb County Juvenile Court are to be measured ... by the test of what a reasonable caseworker would have believed, possessing the same knowledge and in the same circumstances as defendants. If you find reasonable caseworkers possessing the same knowledge and in the same circumstances as defendants could reasonably have believed, and that is objectively could reasonably have believed, that an emergency or ur-

---

**5.** Walker and Cobb County were dismissed by the court in 1988. Defendants Harrison, Med Pool, Cohen, and the P.C. are not parties to this appeal; they settled with Bendiburg after trial.

**6.** We affirm pursuant to 11th Cir.R. 36–1 on all other issues presented by Bendiburg.

gent medical condition existed which threatened the life, safety, or welfare of Carl Bendiburg, requiring the immediate filing of the petition in juvenile court, then you could not hold those defendants liable.

R. 39 at 30. The court did not use the term "qualified immunity," nor did it suggest that the law was not clearly established.

Furthermore, the court submitted a special interrogatory to the jury. That interrogatory, along with the jury's response to it, read as follows:

> 5. Do you find by a preponderance of the evidence that reasonable caseworkers, possessing the same knowledge as defendants Dempsey and Terry at the time of the petition to the Cobb County Juvenile Court, could have believed that an emergency medical condition (*i.e.*, failure to get proper amounts of antibiotics) existed which potentially threatened the life, limb, or welfare of Carl Bendiburg?
>
> YES _√_ NO ___

7. When the district court heard objections to its charge to the jury, Bendiburg's attorney objected to the charge on qualified immunity as follows:

> The Plaintiff's [sic] also excepts to the court's giving of Defendants' Consolidated Request to Charge Number 20 dealing with qualified immunity.
> The law, as established by the Anderson case in the Supreme Court, is that qualified immunity—inquiry for the qualified immunity is whether the objective, albeit, fact-specific question, whether a reasonable official could have believed his actions to be lawful in light of the clearly established law and the information the defendants possessed.
> The court did not instruct the jury on what was the clearly established law. It is difficult for a jury to determine, we would submit, whether—let me restate it this way.
> If an act by a state actor is in violation of a constitutional principle that has been established for over half a century, as this constitutional principle has been established, that state actor's conduct has to be seen and gauged, as far as reasonableness is concerned, in light of the established law. If the law was only established a week before the act, then that's something, we submit, the jury would be entitled to know.
> Here the law had been established for over half a century, and the jury was not charged on that, and that needs to be known by the jury in determining whether or not the state actors' conduct, or indeed all of the defendants' con-

R. 11–269 at 2, Special Interrog. No. 5; *see also* R. 28 at 88.

■ Our precedent suggests that a district court's submission of the factual component of a qualified immunity defense to the jury through a special interrogatory, without mentioning the term "qualified immunity," is proper. *See Stone v. Peacock,* 968 F.2d 1163, 1166 (11th Cir.1992); *Ansley v. Heinrich,* 925 F.2d 1339, 1348 (11th Cir.1991). Bendiburg argues, however, that the district court incorrectly submitted the entire issue of qualified immunity to the jury. For the reasons that follow, we need not decide whether the district court improperly submitted the entire issue of qualified immunity to the jury or properly submitted only the factual component of that issue.

■ Bendiburg objected to that portion of the charge dealing with qualified immunity [7] and the special interrogatory.[8] However, the objections presented to the district court did not complain that the court was submitting the issue of qualified immunity to the jury.

> duct, all those who rely upon qualified immunity, was reasonable under the circumstances.
> The Supreme Court said, "In light of a clearly established law and the information possessed." We've eliminated half of the equation here. The jury was not told that this law had been established for half a century.
> We, as your honor will remember, we had an expert witness who could've testified as an expert on the law pertaining to child-parent relationships, and that it had, in fact, been the law for over half a century. We were not allowed to present that expert, and we were advised that the court would instruct the jury on the law.
> We submit it's error not to tell the jury that this has been the law and how long it's been the law. If the court does not instruct the jury as to what established law is and how long it has been established, it seems to us everything else is just futile.

R. 27 at 113–14.

8. Bendiburg's attorney objected to Special Interrogatory No. 5 as follows:

> Number five we submit is an incorrect statement of the law, again. This is the qualified immunity question. Its argumentative and it defines the emergency as the failure to give proper amounts of antibiotics. That's not what the emergency was at all. Also, it incorporates the welfare standard, which is an incorrect statement of the law.

R. 27 at 127.

Bendiburg argued that the court's instructions were confusing and incorporated an incorrect legal standard, R. 27 at 111; that "[t]he court did not instruct the jury on what was the clearly established law," R. 27 at 113, and that the court did not allow him to present expert testimony as to the status of the law. R. 27 at 114. His complaint with regard to Special Interrogatory No. 5 was that it was argumentative, misstated the emergency, and incorporated an incorrect statement of the law. R. 27 at 127. He did not argue that the court was improperly submitting the issue of qualified immunity to the jury.

In *Hancock v. Hobbs*, 967 F.2d 462, 469 (11th Cir.1992), we held that under Fed. R.Civ.P. 51, a party's failure to object to a qualified immunity charge waived that assignment of error on appeal. Rule 51 requires not only an objection, however; it also requires the party to "stat[e] distinctly . . . the grounds of the objection." Fed.R.Civ.P. 51. Because Bendiburg did not voice an objection suggesting that the court was improperly submitting the issue of qualified immunity to the jury, he is not permitted to assign error on that basis on appeal. *See Formby v. Farmers & Merchants Bank*, 904 F.2d 627, 633 n. 10 (11th Cir.1990) (objecting on one ground does not preserve other, unstated objections for appeal).

■ This circuit recognizes two narrow exceptions to the requirement that a party adequately object to an allegedly erroneous jury charge: "(1) where 'the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing,' " and "(2) where the error is 'so fundamental as to result in a miscarriage of justice' if a new trial is not granted." *Pate v. Seaboard R.R.*, 819 F.2d 1074, 1082 (11th Cir.1987) (citations omitted) (quoting *Lang v. Texas & Pac. Ry.*, 624 F.2d 1275, 1279 (5th Cir.1980) [9] and *Iervolino v. Delta Air Lines, Inc.*, 796 F.2d 1408, 1414 (11th Cir.1986)). Neither exception applies here.

Because Bendiburg did not properly preserve this issue for appeal, we do not consider the propriety of the district court's jury charge and interrogatories.

## V. *Conclusion*

For the reasons stated above, we affirm the judgment of the district court with respect to defendants Dempsey and Terry. We affirm the judgment of the district court with respect to the remaining Defendants–Appellees pursuant to 11th Cir.R. 36–1.

AFFIRMED.

---

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.